CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK et al. v.
COREY BROS. CONST. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. November 17, 1913.)

No. 2,264.

1. MECHANICS' LIENS (§ 256*)—ENFORCEMENT—DEFENSES—RIGHTS OF BOND-
HOLDERS.

In the absence of fraud or collusion, trustees under trust deeds securing
bonds executed by an irrigation company defending a suit to foreclose
mechanics' liens on the works were entitled to the benefit of a defense
that the dam constructed by the complainants as a part of the work was
a failure and prevented the successful operation of the structure.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 450;
Dec. Dig. § 256.*]

2. MECHANICS' LIENS (§ 256*)—ENFORCEMENT—CONTRACT—CONSTRUCTION.

In a suit to enforce mechanics' liens defended by trustees under trust
deeds securing bonds issued by the owner of the works, the trustees al-
leging improper construction were bound by the construction of doubtful
and uncertain provisions of the contract which the parties themselves had
placed thereon and by any waiver of strict performance by the owner.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 450;
Dec. Dig. § 256.*]

3. CONTRACTS (§ 280*)—CONSTRUCTION OF WORK—PERFORMANCE.

Complainants contracted to construct certain irrigation work involving
a large dam. The contract required that the core-wall of the dam should
extend down to and into impervious material, but the drawings which
were made a part of the contract expressly indicated the limit of the
depth to which the excavation was intended to go. Held, that the con-
struction company was justified in assuming that the depth had been es-
tablished after inspection of the materials beneath the site of the dam,
and was sufficient, especially when construction to that depth was ac-
quiesced in by the engineer on the ground as the work progressed, and
hence the company was not responsible for a failure of the project due to
the fact that the dam was not extended downward into impervious ma-
terial.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1249–1280; Dec.
Dig. § 280.*]

4. CORPORATIONS (§ 657*)—FOREIGN CORPORATIONS—CONTRACT—ENFORCEMENT
—FEDERAL COURTS.

Rev. Codes, Idaho, § 2792, provides that every foreign corporation be-
fore doing business in the state shall file with the county recorder of the
county designated as its principal place of business a copy of its articles,
etc., and that no contract or agreement made in the name of, or for the
use or benefit of, the corporation prior to the making of such required
filings, can be sued on by such corporation in any state court. Held that,
as such provision does not declare void a contract made by a corporation
before obtaining the necessary certificate of compliance with the local
law, the corporation was entitled to enforce such contract in the federal
courts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2536–2541,
2550, 2552–2554; Dec. Dig. § 657.*

Foreign corporations doing business in state, see notes to Wagner v. J.
& G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co.,
72 C. C. A. 622.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. COURTS (§ 310*)—FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—PARTIES.

Plaintiff construction company, a Utah corporation, brought suit to foreclose a mechanic's lien only against an irrigation company, an Idaho corporation, and the trustees of the company's mortgage deeds, who were citizens of Illinois. After the suit was brought, a cement company, a Utah corporation, commenced a separate action in the same court against the same defendants to foreclose its lien, after which the construction company filed an amended bill to bring in as parties defendant to its suit the cement company and other parties who were residents of Utah and Idaho; but, before any of such parties had pleaded to the amended bill, the construction company took an order dismissing them. A receiver was then appointed for the irrigation company, who qualified, after which the cement company intervened by petition to foreclose its lien aligning itself with the construction company and claiming lien equal in rank with that of the latter. No objection was made to the intervention, and all persons claiming liens, so far as appeared, had joined. *Held*, that the cement company was not an indispensable party, and its absence would not have divested the court of jurisdiction to proceed, and that federal jurisdiction was not therefore ousted by want of necessary parties defendant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 857; Dec. Dig. § 310.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

6. COURTS (§ 335*)—ENFORCEMENT—FEDERAL COURTS.

Proceedings to enforce a mechanic's lien in courts of the United States must be by suit in equity, notwithstanding that by the state statute in which the lien is created the enforcement thereof may be had by an action at law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 902–907½; Dec. Dig. § 335.*]

7. EQUITY (§ 96*)—CHANCERY PRACTICE—PARTIES.

The chancery rule that all must be made parties who are interested in the controversy is subject to the exceptions that, where a person will be directly affected by the decree, he is an indispensable party, unless the parties are too numerous to be brought before the court; where a person is interested, but will not be directly affected by the decree, he is not an indispensable party, but should be made a party if possible, and where he is not interested in the controversy between the immediate litigants, but is interested in the subject-matter, he may be made a party or not at complainant's option.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 253–256; Dec. Dig. § 96.*]

8. MECHANICS' LIENS (§ 263*)—FORECLOSURE—PARTIES.

Other lienors are not necessary parties to a suit to foreclose a mechanic's lien unless complainant claims priority over their liens.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 471–481; Dec. Dig. § 263.*]

9. MORTGAGES (§ 151*)—PRIORITY—MECHANICS' LIENS.

Rev. Codes Idaho, § 5114, provides that a mechanic's lien is preferred to any lien, mortgage, or other incumbrance of which the lienholder had notice, and which was unrecorded when the improvement was commenced, work done, or materials furnished. A contract for the construction of certain irrigation works was executed August 26, 1909, but the contractor had commenced work under its verbal contract before that date. A first mortgage securing bonds to obtain funds for the construction was acknowledged August 27th and filed for record September 3, 1909. *Held*, that the contractor's right to a mechanic's lien for a balance due was superior to the lien of the trust deeds securing the bonds, and that the

contractor was not estopped to claim such priority because deeds had been given to secure bonds by which previous payments made to him had been obtained.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 307, 309–311, 314–329, 332–336; Dec. Dig. § 151.*]

10. MECHANICS' LIENS (§ 33*)—NATURE OF WORK—IRRIGATION PROJECT—STATE STATUTE.

Rev. Codes Idaho, § 5110, gives a right to a mechanic's lien to a person performing labor on or furnishing materials in the construction of any mining claims, building, wharf, bridge, ditch, dike, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct to create hydraulic power, or any other structure. Held, that irrigation works constructed under the Carey Act to reclaim arid lands was within the statute, and that a contractor for the construction of such works was entitled to a lien to secure payment of the amount due to the full extent of the title, interests, rights, and claims of the irrigation company having the construction contract with the state.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 32, 33, 38; Dec. Dig. § 33.*]

11. MECHANICS' LIENS (§ 291*)—FORECLOSURE—IRRIGATION SYSTEM—SALE.

In a suit to foreclose a mechanic's lien on an irrigation system, it was proper for the court to decree a sale of the system as a whole without right of redemption, where it appeared that the property subject to the lien was so blended and reciprocal in its use that to divide it and sell each part separately would destroy or greatly impair its value to the serious detriment of both public and private interests.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 599–605, 607, 610; Dec. Dig. § 291.*]

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Corey Brothers Construction Company and the Union Portland Cement Company against the Continental & Commercial Trust & Savings Bank and another, as trustees, to enforce liens on the Big Lost River irrigation system in Idaho. Decree for complainants, and defendants appeal. Affirmed.

See, also, 205 Fed. 282.

Mayer, Meyer, Austrian & Platt and Amos C. Miller, all of Chicago, Ill., and Richards & Haga, of Boise, Idaho, for appellants.

H. H. Henderson, of Ogden, Utah, for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appeal in this case presents the question of the priority of lien claimants upon the Big Lost River irrigation system in Idaho. The appellants are trustees under two certain trust deeds securing bonds to the amount of $2,400,000 on the system. The appellees are mechanic's lien claimants for work done and materials supplied in the construction of said system. The court below found that the mechanic's liens were entitled to priority over the liens of the bondholders.

In June, 1909, the construction company began the construction of a dam under a contract with the Big Lost River Irrigation Company, an Idaho corporation. The irrigation system was a "Carey Act

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

project," arising out of a contract which had been entered into by the state of Idaho with one George S. Speer, of date May 27, 1909, all rights under which were subsequently, with the consent of the state, transferred by Speer to the irrigation company. The work of the construction company upon the dam continued until August 15, 1910, when the state of Idaho through its State Land Board forbade the further prosecution of the work and the further sale of water rights in the projected system, principally on account of faults in the construction of the dam. It is conceded that the dam is a failure and that to impound any useful quantity of water therein would imminently endanger life and property. The appellants contend that the decree of the court below is erroneous, and that they are entitled to priority over the mechanic's lien claimants for the reason that the failure of the dam was owing to the fault of the construction company, in that it so far departed from the terms and specifications of its contract with the irrigation company as to make the dam a useless structure.

[1] That contention presents the principal question in the case. The right of the appellants to advance it as a defense to the suit of the appellees is disputed; but we think there can be no question that they have the same right to present that ground for denying the equities of the mechanic's lien claimants that the irrigation company would have, there being no evidence of fraud or collusion between the parties to the construction contract.

[2] In the absence of such evidence, it follows, also, that the appellants are bound by the construction which the parties to the contract placed upon its doubtful or uncertain provisions, and by any waiver by the irrigation company of its strict performance.

[3] There is evidence tending to prove that the dam was improperly constructed and in a manner different in some respects from that which was provided in the contract. The dam was 2,000 feet long, and was intended to impound water to the depth of more than 100 feet. It had a concrete core, but in the main it was constructed of dirt and gravel. No complaint is made of the core or of the material or method of its construction, but it is urged that the material for the embankment was neither deposited in place nor properly puddled in the manner prescribed by the contract. Upon that issue the court below upon a consideration of the evidence found against the contention of the appellants, and we are not convinced that there was error in that conclusion. Undoubtedly a portion of the loose material was handled and deposited in a manner different from that which was prescribed in the specifications, and probably such deviation from the prescribed method contributed in some degree to the inefficiency of the dam. But however that may be, the evidence is that all that was done by the construction company was done with the knowledge and approval of the engineering company under whose supervision, according to the terms of the contract, the work was to be done. We are unable to discover from the evidence that the court below erred in finding that the vital defect was not in the dam itself, but in the fact that subjacent to it there was a stratum pervious to water. It is not shown that for that defect the construction company was responsible. It is true that the terms of the contract required that the core-wall "shall extend

down to and into impervious material"; but the drawings which were made a part of the contract expressly and in no doubtful way indicated the limit of the depth to which the excavation was intended to go. The construction company was justified in assuming as it did that the depth so indicated had been established after inspection of the material beneath the site of the dam and was sufficient. They were confirmed in this view by the attitude of the representative of the engineering company on the ground as the work progressed, who assented to the course which the construction company pursued in accordance with the drawings. The construction company had the right to look to the engineer for the proper construction of the terms of the contract.

[4] It is contended that the contract of the construction company cannot be enforced in any court, state or federal, for the reason that the company, a corporation of Utah, entered into the contract without having complied with the laws of the state of Idaho in reference to foreign corporations. Section 2792 of the Revised Codes of Idaho provides that:

"Every corporation not created under the laws of this state must, before doing business in this state. file with the county recorder of the county in this state in which is designated its principal place of business in this state, a copy of the articles of incorporation of said corporation, duly certified to by the Secretary of State of the state in which said corporation was organized, and a copy of such articles of incorporation duly certified by such county recorder, with the Secretary of State. * * * No contract or agreement made in the name of, or for the use or benefit of, such corporation prior to the making of such filings as first herein provided, can be sued upon or enforced in any court of this state by such corporation."

At the time when the construction company commenced the work, the irrigation company had not been organized; but its organization was contemplated. The work proceeded under a verbal contract between the construction company and the promoters of the irrigation company until August 26, 1909, when, the construction company having complied with the laws of Idaho with reference to foreign corporations, a written contract was entered into. It was upon that contract that the suit was predicated. No valid reason is perceived why, under the circumstances, the suit might not have been brought in a court of the state of Idaho. That question, however, it is not necessary to decide. · It is uniformly held that notwithstanding a provision of state law, such as that of Idaho, which does not declare void a contract made before obtaining the necessary certificate of compliance with the local law, the corporation may enforce the contract in the federal courts. There are some expressions in the opinion in the case of Katz v. Herrick, 12 Idaho, 1, 86 Pac. 873, which are relied upon as indicating that the Supreme Court of that state held such a contract void; but the opinion of the same court in Valley Lumber & Mfg. Co. v. Driessel, 13 Idaho, 662, 93 Pac. 765, 15 L. R. A. (N. S.) 299, 13 Ann. Cas. 63, explains what was said in the former decision in language as follows:

"The court there held that the noncomplying foreign corporation had no legal existence in this state, and, under the law, was without a remedy for the enforcement of any contracts made by it within the state, but did not hold that its contracts were absolutely void."

In 19 Cyc. 1301, the rule is thus stated:

"Where, however, the contract is not void, but the statute merely prohibits the foreign corporation from maintaining an action thereon in any court of the state, it has been held that the corporation may nevertheless maintain an action in the federal courts, since a federal court will not refuse to enforce a valid contract, harmless in itself, which is nonenforceable in the state court merely on account of noncompliance with the state administrative regulations."

The decisions of the federal courts uniformly sustain the rule so expressed. Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 58 C. C. A. 79; Groton Bridge & Mfg. Co. v. American Bridge Co. (C. C.) 151 Fed. 871; Dunlop v. Mercer, 156 Fed. 545, 86 C. C. A. 435; Johnson v. New York Breweries Co., 178 Fed. 513, 101 C. C. A. 639.

[5] It is contended that the court below was without jurisdiction of the cause for want of necessary parties defendant, and that, if the necessary parties defendant had been brought in, the cause would have lacked the requisite diversity of citizenship. The plaintiff, the construction company, a corporation of Utah, made defendants to its original bill only the irrigation company, a corporation of Idaho, and the trustees of the mortgage deeds, citizens of Illinois. Soon after the commencement of the suit, the Union Portland Cement Company, a corporation of Utah, commenced a separate action in the same court against the same parties defendant to foreclose its lien. Five days later the construction company, as plaintiff, filed an amended bill to bring in as parties defendant to the suit the Union Portland Cement Company and other parties who were residents of Utah and Idaho; but before any of these parties had pleaded to the amended bill the construction company took an order of the court dismissing them. Soon thereafter, on motion of the construction company and upon notice to the parties defendant, the judge of the court below appointed a receiver of all of the property of the irrigation company. The receiver qualified and took possession, and he is still in the possession of all of the property of that corporation. The appellants assented to the appointment of the receiver. Thereafter the Union Portland Cement Company intervened in the present suit by a petition to foreclose its lien and aligned itself with the construction company, claiming its lien to be of equal rank with the lien of that company. This claim of equality of lien has not been and is not now contested by the construction company. The liens being on the same property, the lien claimants might, under the statutes of Idaho, have joined in a suit in a court of that state to foreclose their liens. Who the other parties were that were brought in by the amended bill of the construction company and subsequently dismissed does not appear from the record, as the amendment bringing them in and the order dismissing them are not included in the transcript, and we cannot say whether or not they were necessary or proper parties. It does appear, however, that at no time in the course of the proceedings in the court below did any of the parties before the court object to the intervention of the Union Portland Cement Company or plead the omission of any necessary party to the suit. As it is, all parties who claimed liens on the irrigation system were, so far as the record informs us, before the court.

[6] Proceedings to enforce a mechanic's lien in the courts of the United States must be by a suit in equity, notwithstanding that by the statute of the state in which the lien is created the enforcement thereof may be had by an action at law. Davis v. Alvord, 94 U. S. 545, 24 L. Ed. 283; Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853. Whether the statute of the state of Idaho which permits the joinder of all mechanic's lien claimants in a suit to foreclose would have authorized the joinder of the two lien claimants in this case as plaintiffs in the court below, we need not pause to inquire, for the Union Portland Cement Company was not an indispensable party, and its absence would not have divested the court below of jurisdiction to proceed.

[7] In Williams v. Bankhead, 19 Wall. 563, 22 L. Ed. 184, Mr. Justice Bradley, after referring to the general rule of chancery practice that all ought to be made parties who are interested in the controversy, in order that there may be an end of litigation, pointed out the qualifications of the rule as follows:

"First. Where a person will be directly affected by a decree, he is an indispensable party, unless the parties are too numerous to be brought before the court, when the case is subject to a special rule. Secondly. Where a person is interested in the controversy, but will not be directly affected by a decree made in his absence, he is not an indispensable party, but he should be made a party if possible, and the court will not proceed to a decree without him if he can be reached. Thirdly. Where he is not interested in the controversy between the immediate litigants, but has an interest in the subject-matter which may be conveniently settled in the suit, and thereby prevent further litigation, he may be a party or not, at the option of the complainant."

[8] It is held that other lienors need not be made parties to a suit to foreclose a mechanic's lien unless the plaintiff claims priority over the other liens. Case Mfg. Co. v. Smith (C. C.) 40 Fed. 339, 5 L. R. A. 231; Kaylor v. O'Connor, 1 E. D. Smith (N. Y.) 672.

[9] It is contended that the construction company is estopped to assert a lien superior to that of the trust deeds securing the bonds for the reason that the bonds were issued for the purpose of procuring money to pay for the construction work, and for that purpose were sold, and practically $600,000 or more of the proceeds of them were paid to the construction company, and it is urged that it is inequitable that the construction company, knowing the purpose for which the bonds were issued, should have a lien for its work superior to that of the bonds. The mechanic's lien law of the state of Idaho, section 5114 of the Revised Code, among other things, provides that a mechanic's lien is preferred "to any lien, mortgage, or other encumbrance of which the lien holder had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done, or the materials were commenced to be furnished."

The written contract of the construction company was executed on August 26, 1909, but the company had commenced work under its verbal contract before that date, The first mortgage deed was acknowledged August 27, 1909, and was filed for record September 3, 1909. According to the terms of the statute, the mechanic's lien is superior in rank to the trust deeds. The provisions of the statute are controlling here, unless there are equitable considerations which should

change the order of priority of the liens. The appellants cite the case of West v. Klotz, 37 Ohio St. 420, in which it was held that a mechanic furnishing material for the construction of a work may by his agreement with the owner as to the manner of payment, and his acts with respect to the claims of other creditors, be precluded from asserting a mechanic's lien as against such creditors. In that case the lien claimant was among the persons who advanced money for the project and accepted bonds secured by a mortgage on the property and sold such bonds to other persons, and he agreed that his payment for the work should be made in monthly installments out of the moneys received for the bonds. The court held that he was precluded by his acts and his agreement from asserting the priority of his lien over that of the mortgage. There are no such grounds for deferring the mechanic's lien in the present case. The fact that a portion of the proceeds of the bonds has been paid to the construction company on account of its work is no ground of equitable estoppel as against the priority of its lien. The case is simply one where the owner of the property, after making the contract, has placed a mortgage on the property to raise the funds wherewith to meet the obligation of the contract. The funds so raised being insufficient, there is no ground, equitable or legal, for holding that the remainder of the demand of the lien claimant should not be first paid out of the property, as provided by the mechanic's lien law of the state. The construction company has done nothing to lead the bondholders to believe that their lien should be first.

[10] The contention is made that irrigation works constructed under the Carey Act are not subject to the mechanic's lien law of the state of Idaho. Section 5110 of the Idaho Revised Codes, adopted in 1887, gives a lien to the person performing labor upon or furnishing materials to be used in the construction of "any mining claim, building, wharf, bridge, ditch, dike, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct to create hydraulic power, or any other structure." It is urged that it was not intended to include within the statute a provision for liens on reservoirs, dams, and irrigation systems, constructed under those acts of Congress thereafter passed, which constitute the legislation commonly known as the "Carey Act," for the reason that the property belongs to the state of Idaho and to the United States, and the law does not permit a lien either against the state or the general government. The question so presented has been met and decided by the Supreme Court of Idaho in Nelson Bennett Co. v. Twin Falls Land & Water Co., 14 Idaho, 5, 93 Pac. 789, and in Hill v. Twin Falls Land & Water Co., 22 Idaho, 274, 125 Pac. 204; that court holding that one who contracts to construct canals and works for the irrigation of arid lands under the Carey Act is entitled to the benefit of the lien laws to secure payment to him for such work to the full extent of the title, interests, rights, and claims of the company having the construction contract with the state. We see no reason why those decisions are not binding upon this court.

[11] It is urged that the court below erred in decreeing that the irrigation system be sold as a whole and without the right of redemption. The court below had the power to make the decree, and it was its duty to do so if under existing circumstances the equity of the case

required it. In Pacific Northwest Packing Co. v. Allen, 116 Fed. 312, 54 C. C. A. 648, this court held in effect that, wherever the property and franchise described in a lien is so blended together and reciprocal in its use that to divide it and sell each part separately would destroy or greatly impair the value of the same to the serious detriment of both public and private interests, the decree should be made for the sale of the same as an entirety and without redemption, notwithstanding provisions of the state statutes where the property is situated allowing the redemption of real estate. That doctrine is well sustained by the decisions. Farmers' Loan & Trust Co. v. Iowa Water Co. (C. C.) 78 Fed. 881; National Foundry & Pipe Works v. Oconto Water Co. (C. C.) 52 Fed. 43; Hammock v. Loan & Trust Co., 105 U. S. 77, 26 L. Ed. 1111.

Other minor grounds for reversing the decree are presented by the appellants; but we find no merit in them, and nothing requiring further discussion.

The decree will be affirmed.