PENN BRIDGE CO. v. CITY OF NEW ORLEANS et al.

(Circuit Court of Appeals, Fifth Circuit. April 26, 1915. Rehearing Denied May 28, 1915.)

No. 2728.

**1. APPEAL AND ERROR ⬦274—PRESENTING QUESTIONS IN LOWER COURT—SUFFICIENCY OF EXCEPTION—DIRECTED VERDICT.**

In an action by a bridge contractor for sums claimed to be due for the construction of a bridge which collapsed, and for the construction of a new bridge in place thereof, where, on defendant's motion for a directed verdict, the court, after expressing its opinion that there could be no recovery for the construction of the bridge which collapsed, directed a verdict for the balance due for the work on the second bridge, and the bill of exceptions stated that thereupon counsel for plaintiff excepted and reserved its bill of exceptions, which was then and there noted, the exception was manifestly directed to the disposition of the motion for a directed verdict, and was sufficient to present for review the act of the court in denying a recovery for the bridge which collapsed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1591, 1592, 1605, 1606, 1607, 1624, 1631–1645; Dec. Dig. ⬦274.]

**2. CONTRACTS ⬦302—PERFORMANCE—DESTRUCTION BEFORE COMPLETION—STATUTE.**

Civ. Code, La. art. 2758, providing that when the undertaker furnishes materials for the work, if the work be destroyed, in whatever manner it may happen, previous to its being delivered to the owner, the loss shall be sustained by the undertaker, unless the proprietor be in default for not receiving it, though notified to do so, does not render a bridge contractor liable for the loss caused by the collapse of the bridge, due to faulty plans and specifications which he was required by the owner to follow without deviation, since it cannot be supposed, in the absence of a clear expression, that the Legislature intended to make the contractor liable for an injury caused by the owner.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1401–1408; Dec. Dig. ⬦302.]

**3. STATUTES ⬦226—RULES OF DECISION—LOUISIANA STATUTE—FRENCH DECISION.**

A decision of the French Court of Cassation, construing a provision of the Code Napoléon, is not binding authority on the Circuit Court of Appeals as to the construction of a similar provision in the Louisiana Code, especially where the decisions of Louisiana, though not directly in point, indicate that it has not been considered that the statute had the meaning given by the French decision.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 307; Dec. Dig. ⬦226.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

**4. CONTRACTS ⬦302—PERFORMANCE—DEFECTIVE PLANS.**

A contractor, who agreed to construct a bridge in accordance with the plans and specifications furnished by the other party, from which the contractor was not permitted to deviate, can recover for material and labor furnished thereunder, where the bridge collapsed just prior to its completion because of a defect in the plans and specifications.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1401–1408; Dec. Dig. ⬦302.]

Maxey, District Judge, dissenting.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

222 F.—47

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action by the Penn Bridge Company against the City of New Orleans and another. From a judgment for the plaintiff for a part only of the amount claimed, plaintiff brings error. Reversed and remanded for new trial.

R. E. Milling, Irving R. Saal, William Grant, and William B. Grant, all of New Orleans, La., for plaintiff in error.

I. D. Moore, City Atty., and John F. C. Waldo, Asst. City Atty., both of New Orleans, La., for defendant in error City of New Orleans.

Percy S. Benedict, of New Orleans, La. (McCloskey & Benedict, of New Orleans, La., on the brief), for defendant in error New Orleans Ry. & Light Co.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

WALKER, Circuit Judge. Omitting mention of details not necessary to be considered in reviewing the ruling of the trial court which is assigned as error, the petition alleged, and there was evidence tending to prove, the following facts:

The plaintiff in error contracted with the defendant in error the city of New Orleans to build for it a bridge of the bascule or lift type, strictly in accordance with plans and specifications furnished to the city by bridge architects employed by it alone. After the plaintiff in error had, in pursuance of the terms of the contract and under the supervision of the city engineer, carried the work to a point nearing the completion thereof, the bridge collapsed and fell while it was being lowered from a vertical to a horizontal position upon the request and order of the official of the city who had the supervision for it of the construction work. This collapse of the bridge was not due to any fault or omission of the plaintiff in error, its agents, servants, or employés, nor to any defective material used therein, nor to any nonobservance by it of any requirement of the contract, but was due altogether to the plans and specifications, which, as above stated, the contract required the builder strictly to observe and follow, being fundamentally defective and insufficient. That contract contained the following provisions:

"14. Damage to Bridge.—The contractor shall be responsible for all damages the bridge might suffer from fire, storm, or whatsoever cause during erection or after completion until accepted by the city engineer and the commissioner of public works. * * *

"20. Maintenance.—The contractor guarantees, at his expense, to maintain to the satisfaction of the commissioner of public works, in good condition, for a period of one (1) year from the day it is accepted by the city engineer, all of the work executed under the contract."

During the progress of the work, before the collapse of the bridge, payments had been made thereon as provided for in the contract; but the proportion of the work contracted for which had then been done was considerably greater than that which the amount that had

been paid thereon bore to the contract price. After the collapse of the bridge the city procured new and revised plans and specifications for its erection, and it was completed under a new contract entered into between the city and the plaintiff in error, which provided for the payment of a specified sum for the work called for by that contract. It was expressly stipulated in that contract that the making of it was "without prejudice, waiver, or admission of liability by or on behalf of any party hereto, either to each other or to third persons, each denying that it is liable either to the other, or to third persons, for the collapse of said bridge, or for any damage, injury, loss, or liability flowing therefrom." There was evidence tending to prove that an unpaid balance was due under this second contract.

[1] At the close of the evidence the counsel for the defendants moved the court orally to instruct the jury to find a verdict for the defendants. Thereupon the presiding judge made some remarks to the jury as to his views of the rules of law applicable to the case, which he concluded with this statement:

"However, there is due the plaintiff an amount of $2,551.93 for matters arising after the failure of the bridge, and I will direct a verdict for that amount."

Immediately following its recital of this statement, the bill of exceptions states:

"And thereupon, and before the said jury retired, immediately after said charge, counsel for the plaintiff then and there, in the presence of the jury, excepted and reserved this its bill of exceptions, which was then and there noted."

The counsel for the defendants in error suggest that the exception which was reserved was insufficient to present for review any action of the trial court, in that it failed to direct the attention of the court to any particular ruling sought to be made the subject of objection. There is no merit in this suggestion. Manifestly the exception reserved was directed, not to what the court said in explanation of the ruling it was about to make, but to the action of the court in so disposing of the motion submitted as to deny the plaintiff's right to recover anything for work done under the original contract. The exception sufficiently directed the attention of the court to the ruling made on the motion for a directed verdict, and it duly presents that ruling for review. E. H. Rollins & Sons v. Board of Commissioners, 80 Fed. 692, 26 C. C. A. 91.

[2] The effect of the court's ruling was to deny the plaintiff in the case any right to recover for work done under the original contract, though its failure to complete the work called for by that contract was due, not to any fault on its part, but to a collapse of the bridge because the plans and specifications for it, to which the plaintiff had to conform, were fundamentally wrong, and though neither the agreed price for building the bridge nor so much of that price as was proportionate with the part of the work which had been done at the time of the collapse had been paid. This amounted to holding that any loss resulting from the collapse of a structure while in course of erection must fall on the party who undertook the work of construc-

tion, though the collapse was due, not at all to his fault or omission, ·but wholly to the fatal insufficiency of plans and specifications for which he was in no way responsible and from which he was not permitted to deviate. The remarks made by the presiding judge in explanation of the ruling he was about to make show that he regarded the provision contained in article 2758 of the Civil Code of Louisianâ as determinative of the question presented for decision. That provision is as follows:

"Art. 2758. Accidental Destruction Before Delivery.—When the undertaker furnishes the materials for the work, if the work be destroyed, ·in whatever manner it may happen, previous to its being delivered to the owner, the loss shall be sustained by the undertaker, unless the proprietor be in default for not receiving it, though duly notified to do so."

This article provides when the loss resulting from the destruction of a work before it has been completed and delivered is to fall on the undertaker or builder. Another article of the same Code (article 2762) provides when the loss due to a building falling to ruin after its completion and delivery is to fall upon the builder. It is to be noted that neither of these provisions contains language which makes it plain that it was a part of the legislative purpose to subject the builder to the loss occasioned by a destruction of the work, due to a cause for which he was not responsible and of which the owner alone had control. In the framing of each of these articles use was made of provisions on the same subjects contained in the Code Napoléon (articles 1788, 1792). They were redrafted and somewhat changed in phraseology before being incorporated in the Louisiana Civil Code.

It is not without significance that a change made in the redrafting of the last-mentioned article consisted in its omission of a clause found in the corresponding article of the Code Napoléon—one making the contractor responsible for the loss resulting from the fall or collapse of a building as a result of a defect in its foundation—the effect of which would have been to make the builder bear a loss due to a cause for which he may not have been at all responsible, and for which the owner may have been solely responsible. The difference between the last-mentioned provision and the corresponding one of the Code Napoléon has been noted in Louisiana decisions. Fremont v. Harris, 9 Rob. (La.) 23; Powell v. Markham, 18 La. Ann. 581. To say the least, the history of the enactment of that provision, which is cognate with the one which is claimed to have a bearing upon the decision of the instant case, contains some evidence of a lack of intention on the part of the Legislature to cast upon a builder the loss consequent upon the destruction of his work due to a cause for which he was in no way responsible, and for which the owner was solely responsible.

But, without regard to this consideration, we do not think that with any plausibility it can be contended that the Legislature, in using the ·words, "if the work be destroyed, in whatever manner it may happen, previous to its being delivered to the owner," had in contemplation a destruction of the work due to the owner's fault while it is still incomplete in the hands of the contractor. It seems to be more rea-

sonable to infer that in such a use of the words quoted in the connection in which they are found there was a tacit assumption that a destruction of the work would not be attributable to the owner when it occurred before there had been a delivery to him. In stating the builder's responsibility for the structure before its delivery to the owner, it is not to be supposed, in the absence of a clear manifestation of a purpose in that regard, that the Legislature had in mind an injury caused by the owner himself, or intended to charge the builder with liability therefor. Even in the case of the common-law liability of a common carrier, generally stated as extending to any loss or injury not due to an act of God or the public enemy, the responsibility of the carrier for damage to the thing carried caused by the shipper himself is impliedly excluded.

The provision relied on evidences an intention of the Legislature to go so far as to cast upon the builder a loss occasioned by a destruction of the work before delivery, though such destruction was without fault on his part, or is unexplained, but by no means evidences a purpose to cast upon one party to a building contract a loss for which the other party to that contract is solely responsible. More definite language than that found in the provision in question would be required to warrant the imputation to the Legislature of such a purpose. We do not think that it would be more permissible to give to the provision in question the meaning which is sought to be attributed to it than it would be to construe section 14 of the contract, above set out, as having the effect of enabling the city willfully to cause the destruction of the bridge before its completion, and then hold the contractor responsible for the damages so sustained.

While there has not come to our notice any decision of a Louisiana court specifically to the effect that the article of the Civil Code which is invoked does not make a contractor liable for a failure of his work due to the badness of the plan made for it by another, and which the contractor was required to follow, decisions which have been rendered to the effect that a builder is not responsible for results attributable to defects in the architect's plans (Hebert v. Weil, 115 La. 424, 39 South. 389; Mahoney & Co. v. St. Paul's Church, 47 La. Ann. 1064, 17 South. 484) indicate that the opinion has not heretofore been entertained that the statute in question has the meaning now imputed to it. And we are not of opinion that it has that meaning.

[3] We have been referred to a decision of the French Court of Cassation as giving the meaning contended for by the counsel for the defendants in error to the article of the Code Napoléon corresponding with article 2758 of the Louisiana Civil Code. Such rulings on questions of the interpretation of Code provisions are not to be followed when found to be inconsistent with the jurisprudence of Louisiana, as evidenced by the decisions of its own courts, as, in view of the two rulings last above cited, the one relied on seems to be. Hubgh v. New Orleans & Carrollton R. Co., 6 La. Ann. 495, 510. At any rate, that decision of the French court is not authoritative in this jurisdiction, and we think that the considerations stated above are

such as to require the conclusion we have reached on the question presented.

[4] The inquiry, then, is as to the rule to be applied in the absence of a governing statute. The transaction disclosed is the familiar one of a contractor undertaking to furnish the material and work called for in a contemplated structure required to be erected in conformity with plans and specifications supplied by the owner or his architect; no more being expected of the contractor than that he follow such plans and specifications, without critical investigation of their sufficiency. Such a contractor loses any right to recover on the contract by a performance not in substantial conformity with the requirements of it. If, because of the badness of the plan, the contemplated structure cannot be brought to successful completion in the way required to be pursued, and nevertheless the contractor can be entitled to nothing unless he follows the plan prescribed, the contract has the effect of placing him in a dilemma from which there is no chance for him to escape without loss, though this situation is brought about by requirements imposed by the other party to the contract.

It cannot be supposed that such contracts would be matters of such common occurrence—that owners would be able to secure them, or that contractors could be found who would be willing to subject themselves to such risks of loss due to no fault on their part—if it was understood by the parties that the making of such contracts involved such results; and there is abundant authority for the assertion that such transactions do not have such consequences. We understand it to be well settled that by the making of such a contract as the one involved in this case the owner impliedly warrants the sufficiency for the purpose in view of the plans and specifications which the contractor is required to follow, and subjects himself to liability to the contractor for loss or damage entailed upon the latter in consequence of a fatal deficiency or fault in the plans or specifications not discoverable by him by the exercise of ordinary diligence upon inspection. Bentley and Others v. State, 73 Wis. 416, 41 N. W. 338; MacKnight Flintic Stone Co. v. Mayor, 160 N. Y. 72, 54 N. E. 661; Murphy v. National Bank, 184 Pa. 208, 39 Atl. 143; Filbert et al. v. Philadelphia, 181 Pa. 530, 37 Atl. 530; Continental & C. T. & S. Bank v. Corey Bros. Const. Co., 208 Fed. 976, 126 C. C. A. 64; Bush v. Jones, 144 Fed. 942, 75 C. C. A. 582, 6 L. R. A. (N. S.) 774; Sickels v. United States, 1 Ct. Cl. 214; 6 Cyc. 63.

A contractor's right to recover for material and labor furnished under such a contract as the one involved in this suit is not to be denied when he shows a performance of all that he undertook to do, except in so far as performance was rendered impossible by a fatal fault of the plan he was required to follow, the responsibility for which fault and for the failure to discover it in time to avoid the consequent loss to the contractor was solely that of the owner or his architect or supervisor.

The conclusion is that the court was in error in making the ruling complained of. It follows that the judgment should be reversed, and the cause be remanded for a new trial; and it is so ordered.

MAXEY, District Judge (dissenting).    In addition to the reasons assigned by the District Judge for giving an affirmative instruction in favor of the defendants in error, it is thought by the writer that the instruction was proper for the reason that it was justified by the very terms of the following provision of the contract, entered into between the bridge company and the city of New Orleans.    Section 14 reads as follows:

"Damage to Bridge.—The contractor shall be responsible for all damages the bridge might suffer from fire, storm, or *whatsoever cause during erection* or after completion until accepted by the city engineer and the commissioner of public works."

By this contract the parties are bound just as they have bound themselves.    Its language is plain and unambiguous.    By its terms the contractor bound itself, without reservation and with no provision for dispensation, to be responsible for all damages the bridge might suffer from any cause whatsoever during its erection or after completion until accepted by the proper authorities.    During its erection, and therefore before acceptance by the city engineer and the commissioner of public works, the bridge collapsed without negligence on the part either of the city or of the bridge company.    It is said that the collapse was due to defective plans and specifications furnished by the city's architect.    Let that view of the case be granted, and it still remains true that the bridge company is responsible, unless the court interpolates in the contract a provision which the parties, with the plans and specifications before them, failed to do.    To relieve the bridge company of the responsibility which it voluntarily assumed, the court must make a new contract for the parties, by inserting at the end of section 14 the following, or equivalent, words: Except damages arising from defective plans and specifications.    It is quite clear that the court is without power to effect such a change.    The contract must stand, with its benefits and burdens, as the parties themselves have made it.    And this view of the law is supported by the highest authority.    The case of Dermott v. Jones, 2 Wall. 1–9, 17 L. Ed. 762, is so directly applicable to the case before the court that an apology for a lengthy quotation from it is not deemed necessary.    In the Dermott Case the pertinent facts were as follows:

Jones, a mason and housebuilder, contracted with Miss Dermott to build a house for her, the soil on which the house was to be built being her own. The house was to be built according to very detailed plans and specifications, which the "architect" of Miss Dermott had prepared, and which were made part of the contract.    In the contract, Jones covenanted that he would procure and supply all matters requisite for the execution of the work "in all its parts and details, and for the complete finish and fitting for use and occupation of all the houses and buildings, and the several apartments of the house and buildings, to be erected pursuant to the plan of the work described and specified in the said schedule, and that the work, and the several parts and parcels thereof, shall be executed, finished, and ready for use and occupation, and be delivered over, so finished and ready," at a day fixed.    Jones built the house according to the specifications, except in so far as Miss Dermott had compelled him, according to his account of things, to deviate from them.    Owing, however, to a latent defect in the soil, the foundation sank, the building became badly cracked, uninhabitable, and so dangerous to passers-by, that Miss Dermott was compelled to take it down, to renew the foundation with artificial "floats," and to rebuild that part of the structure which had given away.    This

she did at a large expense. As finished on the artificial foundations the building was perfect.

With the foregoing facts in view, it was said by Mr. Justice Swayne, as the organ of the court:

"The defendant in error insists that all the work he was required to do is set forth in the specifications, and that, having fulfilled his contract in a workmanlike maner, he is not responsible for defects arising from a cause of which he was ignorant, and which he had no agency in producing. Without examining the soundness of this proposition, it is sufficient to say that such is not the state of the case. The specifications and the instrument to which they are annexed constitute the contract. They make a common context, and must be construed together. In that instrument the defendant in error made a covenant. That covenant it was his duty to fulfill, and he was bound to do whatever was necessary to its performance. Against the hardship of the case he might have guarded by a provision in the contract. Not having done so, it is not in the power of this court to relieve him. He did not make that part of the building 'fit for use and occupation.' It could not be occupied with safety to the lives of the inmates. It is a well-settled rule of law that, if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him. Paradine v. Jayne, Alleyn, 27; Beal v. Thompson, 3 Bosanquet & Puller, 420; Beebe v. Johnson, 19 Wend. (N. Y.) 500, 32 Am. Dec. 518; 3 Comyn, Digest, 93. The application of this principle to the class of cases to which the one under consideration belongs is equally well settled. If a tenant agree to repair, and the tenement be burned down, he is bound to rebuild. Bullock v. Dommett, 6 Term, 650. A company agreed to build a bridge in a substantial manner, and to keep it in repair for a certain time. A flood carried it away. It was held that the company was bound to rebuild. Brecknock Company v. Pritchard, Id. 750. A person contracted to build a house upon the land of another. Before it was completed it was destroyed by fire. It was held that he was not thereby excused from the performance of his contract. Adams v. Nickols, 19 Pick. (Mass.) 275, 31 Am. Dec. 137; Brumby v. Smith, 3 Ala. 123, is to the same effect. A party contracted to erect and complete a building on a certain lot. By reason of a latent defect in soil the building fell down before it was completed. It was held (School Trustees v. Bennett, 27 N. J. Law, 513, 72 Am. Dec. 373, a case in New Jersey, cited by counsel) that the loss must be borne by the contractor. The analogies between the case last cited and the one under consideration are very striking. There is scarcely a remark in the judgment of the court in that case that does not apply here. Under such circumstances equity cannot interpose. Gates v. Green, 4 Paige (N. Y.) 355, 27 Am. Dec. 68; Holtzaffel v. Baker, 18 Vesey, 115. The principle which controlled the decision of the cases referred to rests upon a solid foundation of reason and justice. It regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments lie in the way, and a loss must ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated." 2 Wall. 7, 8, 17 L. Ed. 762.

See, also, United States v. Gleason, 175 U. S. at page 602, 20 Sup. Ct. 228, 44 L. Ed. 284.

In the judgment of the writer, the ruling of the court in Dermott v. Jones is decisive of the present case, and he is therefore of the opinion that the judgment should be affirmed. The foregoing views are strongly supported by the case of Lonergan v. San Antonio Trust Company, decided by the Supreme Court of Texas and reported in 101 Tex. 63–81, 104 S. W. 1061, 106 S. W. 876, 130 Am. St. Rep. 803.

This case should have been added to the opinion before filing, but counsel in the cause made no reference to it and it has only been recently called to the attention of the writer.

NOTE.—Upon the trial of the cause Judge Foster delivered the following charge to the jury:

"Gentlemen, in this case you have listened very patiently to the evidence for some days, and no doubt you are entitled to know what the court thinks about the law. Under the Code of Louisiana, article 2758, if a contractor is putting up a building, and of course a bridge is a building, and it falls for any reason before the completion of the work, the loss falls on him. Now' there would be an exception if it failed from any act of the owner, if he had willfully destroyed it or had been negligent in his duty. The only question, then, in this case, is whether or not, under the facts of the case, there was either an express or implied warranty in the contract that the plans were sufficient; in other words that a bridge could be built that would sustain itself and do the work required of it under the plans and specifications. There is no express warranty in the contract, and the parties had equal opportunity of possessing themselves with knowledge as to the sufficiency of the plans. The city was building a structure that had been designed by engineers of reputation and had been patented, and the contractors had to look to these engineers for the plans, and the evidence shows conclusively that they were in constant correspondence. The proof also shows conclusively that, if the contractor had chosen to do so, he could have figured the stresses of these members of the bridge before erecting them, though I think the proof would warrant the conclusion that it was not easy to do so. However, he could have done so; he had just as much opportunity as the city. Furthermore, the contractor was obliged to pay the fee of these engineers and submit the shop drawings for their approval. Under all the facts I am forced to the conclusion that there was no implied warranty on the part of the city that the plans were sufficient. Therefore, the buildings having fallen without any fault or breach of warranty on the part of the city, under the article of the Code, the burden must be borne by the contractor. There is no appreciable conflict in the evidence on the material points, and therefore nothing for you to do, especially in view of the pleadings. However, there is due the plaintiff an amount of $2,551.93 for matters arising after the failure of the bridge, and I will direct a verdict for that amount."