FEDERAL LAND BANK OF NEW ORLEANS v. LOCOCO.

No. 1781.

Court of Appeal of Louisiana. First Circuit.

Jan. 11, 1938.

Theodore Cotonio, of New Orleans, for appellant.

Harold Moses, of New Orleans, and Howell & Deramee, of Thibodaux, for appellee.

OTT, Judge.

On June 11, 1927, the Federal Land Bank of New Orleans sold to the defendant, Onofrio Lococo, and another party, a plantation on the right descending bank of Bayou Lafourche. The sale was made with full warranty of title. At the time of the sale there was located on said plantation a sugar cane hoisting derrick on the banks of the said bayou, which derrick was used to load barges with sugar cane grown on the plantation. The defendant purchased the interest of his co-owner in the plantation and became the owner of the entire plantation in 1934. The plaintiff will hereafter be referred to as the bank, and the defendant will be referred to as the defendant, which reference will apply to him in his position as plaintiff in injunction as well as defendant in the main suit.

In 1935, the United States engineers were dredging the said bayou in connection with work on the Intracoastal Canal, and, by reason of excavations made along the bank of the bayou, the dirt opposite this derrick became loosened, and the derrick fell into the bayou, rendering it useless to the owner of the plantation. The United States engineers refused to repair the derrick or pay damages for its destruction for the reason that the derrick had been built on the banks of the bayou without permission from the United States engineers as required by an act of Congress. Act June 13, 1902, § 1, 33 U.S.C.A. § 565.

Defendant attempted to hold the bank responsible for the repair of the derrick which had been erected on the land before he purchased it from the bank. He claimed that the bank was liable for the repair of the derrick under its warranty title. After some negotiations between the bank and defendant, they entered into a compromise agreement on this disputed point of the liability of the bank for the repair. This compromise agreement was in writing, and is dated September 9, 1935, and the substance of the agreement is as follows:

The parties accepted the estimate of Edward Campos, of Thibodaux, to repair the derrick for the sum of $1,300, and agreed that, on the completion and acceptance of the repair work, the bank was to pay said Campos the entire cost of the repair, and defendant was to reimburse the bank for one-half of the cost by giving twenty notes, running over a period of twenty years, with 5 per cent. interest per annum, which notes were to be secured by a second mortgage on the plantation in

favor of the bank. The last paragraph of the compromise agreement reads as follows: "That, upon execution of the aforesaid notes and second mortgage, completion of the repair work and payment of the firm of Edward Campos, Thibodaux, Louisiana, the party of the first part (defendant) will release and relieve the party of the second part (the bank) from any and all claims or actions of any nature or kind whatever that might now exist or later arise in connection with the sugar cane hoisting derrick, or permit therefor, on said property."

In the meantime, and before the compromise agreement was signed, the bank had procured for defendant a permit from the United States engineers to erect the derrick on the banks of the bayou under certain restrictions and according to plans and diagrams shown on the drawings attached to the permit. On September 10, 1935, the bank addressed a letter to Campos accepting for itself and for the defendant the proposal to repair the derrick for $1,300, subject to the condition that Campos, before beginning the work, was to procure from each of his employees on the job, a statement relieving defendant and the bank from any claims they might have on account of the work; further, that the work was to be performed in accordance with the plans and permit approved and issued by the United States engineers, and, before Campos was to be paid, the work was to be approved and accepted by the defendant and Mr. Roberts, engineer for the bank. A copy of this letter was furnished to the defendant, and he acquiesced in the terms of the contract, and the contractor, Campos, proceeded to repair the derrick.

It appears that Mr. Roberts, the engineer of the bank, made some three or four trips to the plantation to start off the work and, during the progress of the work, to advise with and instruct the contractor, and, on October 22, 1935, this engineer accepted the work as complete. On that date the bank paid the contractor the total cost of the repair work, $1,405, and on the same date, the defendant signed a letter to the bank in which he stated that the repairs on the derrick had been satisfactorily completed, and he authorized the bank to pay the contractor in accordance with the compromise agreement. The last paragraph of this letter reads as follows: "Further, this is to advise that I hereby release and relieve The Federal Land Bank of New Orleans from any and all claims or actions of any nature or kind whatever that might now exist or later arise in connection with the sugarcane hoisting derrick, or permit therefor, on said property."

The notes and mortgage were executed by the defendant to the bank on the same day for the sum of $700, being the amount due by the defendant for his one-half of the cost, represented by twenty notes for $35 each, running over a period of twenty years; the first note being due December 1, 1935, and annually thereafter. The first note was paid, but the defendant failed to pay the note due December 1, 1936.

Just after the payment of the first note, that is to say on the 13th day of December, 1935, the derrick which had been erected by Campos collapsed and fell into the bayou after it had been used for some twelve days. The defendant made a demand on Campos to repair the derrick, as defendant claimed that the derrick had fallen because of a defective guy line put up by Campos. Being unable to get any satisfaction out of Campos, defendant, through his attorney, requested the bank to join him in an action against Campos to force him to replace the derrick, but the bank refused to join defendant in such an action.

Defendant having failed to pay the note due December 1, 1936, the bank, under a clause in the mortgage maturing all notes on the failure to pay any one note, instituted foreclosure proceedings against the defendant in January, 1937. The defendant filed a petition for an injunction and obtained a restraining order and rule against the bank to show cause on February 12, 1937, why the injunction should not be made permanent. He also asked for damages against the bank in the sum of $1.464.80, which he claimed to have sustained in repairing the derrick, the value of a mule killed when the derrick fell, and the expense incurred by him in getting off his 1935 cane crop.

The ground on which defendant bases his action for an injunction to arrest the sale of his property is that the notes were given without consideration, for the reason that the bank prepared the plans, secured the permit, and supervised the repair of the derrick by Campos; that defendant relied on the engineer of the bank who accepted the work and who represented to defendant that the work had been done in a prop-

er manner, and that it was on these representations of the bank's engineer that he signed the mortgage, notes, and release to the bank; that when he signed said mortgage, notes, and release to the bank, he did so believing that the derrick had been properly repaired by said Campos, and that these documents were signed by him through error and without consideration.

Several pleas and exceptions were filed by the bank to the action of defendant for an injunction and for damages, all of which were overruled, except a plea of prescription, which was referred to the merits. The conclusion reached renders it unnecessary for us to further mention and discuss these pleas and exceptions. Suffice it to say that the bank filed an answer detailing the history of its transactions with the defendant, denying that it assumed any responsibility in repairing the derrick by Campos, and alleged that if there were any defects in the derrick, Campos would be liable therefor and not the bank.

The testimony was submitted on the rule nisi and on the merits, and the trial judge rendered a judgment discharging the rule, denying the petition of the defendant for an injunction, and rejecting the demands of the defendant. From this judgment, the defendant has appealed, and he has also obtained and perfected an order of appeal from the executory process issued under the mortgage.

■ At the beginning of the trial, counsel for the bank objected to testimony seeking to show error in the compromise agreement, or in the release signed by defendant to the bank, or in the mortgage executed by the defendant in favor of the bank, for the reason that there were no specific errors alleged, nor were there any allegations of fraud or misrepresentation made in the petition which had the effect of misleading the defendant in signing the compromise agreement and the act of release to the bank. The testimony was admitted subject to the objection.

Defendant does not allege nor contend that he signed the compromise agreement through any error of law or fact. Neither is he seeking to set aside or change the subject-matter of that compromise. The matters and things covered in the compromise agreement related to the rights and liabilities of the parties occasioned by the first collapse of the derrick, and the compromise settled and foreclosed these questions by providing the conditions on which the repairs were to be made. The present complaint is grounded on an alleged failure of duty on the part of the agents and employees of the bank in carrying out the terms of the compromise. Therefore, the provisions of article 3078 of the Civil Code, giving to the subject-matter of the compromise the effect of the thing adjudged, have no application to the issues involved here.

■ As we understand the contention of defendant, he claims that the bank, through its agents and employees, took upon itself the whole authority and control of repairing the derrick under the contract with Campos made in pursuance of the compromise agreement; that the agents and engineer of the bank prepared the plans under which Campos rebuilt the derrick, and directed him in the work; that the engineer of the bank assured defendant that the derrick was properly constructed by Campos; and that it was because of this assurance that defendant accepted the work and granted a release to the bank from further liability on account of the derrick.

From this situation, the defendant takes the position that the engineer of the bank is responsible for the defects in the derrick, and, therefore, is responsible for its fall and destruction under the provisions of article 2762 of the Civil Code. Learned counsel for defendant has undertaken to compare and apply to this case the case of Penn Bridge Company v. City of New Orleans et al., 5 Cir., 222 F. 737, 138 C.C.A. 191, where the contractor was relieved of liability for the collapse of a bridge before its completion and acceptance on the ground that the collapse was due to defects in the plans made by the architect on behalf of the owner, and where the contractor followed the plans and specifications.

But our examination of the facts does not support either the allegations of defendant's petition nor his conclusions of law on the facts as they are shown to have existed. In the first place, while the engineers of the bank did prepare plans for the derrick, yet it is shown that these plans were prepared to submit to the United States engineers to assist the defendant in getting a permit to erect the derrick on the bayou. These plans were approved by the United States engineers and were attached to the permit issued to the de-

fendant to erect the derrick. The plans then became a part of the permit for which the bank was no more responsible than the United States engineers who approved and adopted these plans and made them a part of the permit issued to defendant.

Moreover, if the Campos derrick fell because of the improper splicing of a cable used for a guy line, as contended by defendant, this defect did not arise from any fault in the plans and specifications attached to the permit, as there is no splicing of any cables shown thereon, or permitted therein, but the defective splicing, if such caused the collapse of the derrick, was the fault of the contractor in erecting the derrick. Nor does the evidence show that the engineer of the bank had anything to do in the way of causing the contractor to splice the cable as he did.

The evidence shows that Campos was employed jointly by the defendant and the bank to make the repairs on the derrick in accordance with the plans furnished by the United States engineers. It was the purpose of both the bank and the defendant to rebuild the derrick as it had been before the first fall. The engineer of the bank was not supervising the work solely as an architect for the bank, but, with the implied consent of the defendant, he was looking after the work for both parties in order to carry out the compromise agreement into which they had entered. Defendant had an equal opportunity with the bank to check up on the work of Campos. The engineer of the bank did not undertake to act as a supervising architect on the job, and was under no greater duty to locate a defect in the guy line than defendant. Nor did the bank or its engineer guarantee the work of Campos, who was employed jointly by the bank and the defendant.

One of the conditions of the contract made with Campos on September 10, 1935, was that the contractor was not to be paid for the work until it was accepted and approved by the defendant and the engineer of the bank. The defendant was aware of this provision in the contract,

and assented to it. He had as much right to refuse to accept defective work as did the engineer of the bank. If he was willing to take the statement of the bank's engineer on this point, that was his own voluntary act. There is certainly no evidence going to show that the engineer misled him, or knowingly withheld any facts from him. On the contrary, the evidence indicates that the engineer was in the same position as defendant relative to a defect in the cable, if there was such a defect; that is, he knew nothing of it. And when defendant signed the letter releasing the bank from further liability, the bank had no more knowledge of the alleged defect in the cable than did defendant.

▇▇▇ Defendant urges in brief three other grounds of liability on the part of the bank; the failure of the bank to require a bond of Campos; the appointment by the bank of an incompetent engineer; and the refusal of the bank to join him in a suit against the contractor. Of these three grounds, we find only the first set up in defendant's petition, in article 14, and as to this ground of liability on the part of the bank, it is insufficient to hold the bank. As has already been said, the contract with Campos was made jointly by the bank and the defendant. The latter had as much right to demand a bond of the contractor as did the former. The defendant acquiesced in the terms of the contract, and he cannot now be heard to complain of its terms in so far as his cocontractor is concerned.

As to the other two grounds, they are not set up in the petition, and, if they were, there would be no difference in the result, as will appear from what has already been said.

We find no error in the judgment appealed from, and as to the order of executory process, there was ample evidence to support the order.

For the reasons assigned, the judgment appealed from is affirmed, and the order of executory process is maintained, all at the cost of defendant and appellant.