RHODES v. WILSON.

1. EVIDENCE — PAROL TO EXPLAIN WRITTEN CONTRACT. — A bond for a deed, after reciting a note given by the vendee, was conditioned that, if the vendee "shall pay said note at maturity," pay taxes, etc., the vendor would, " on the completion of said payments, make, execute and deliver * * * a good and sufficient warranty deed to the. said premises, subject to incumbrance of $2,500 to estate of Joseph Mason, deceased." *Held,* that the contract was not sufficiently definite and certain to exclude parol evidence showing what kind of incumbrance was meant, and when it was due and payable.

2. CONTRACT — INTERPRETATION. — The evidence showed that when the bond was executed the vendor owned the property, subject to a trust deed to Mason securing five notes of $500 each, drawing ten per cent. interest, none of which were then due, but two of which became due before the vendee's note matured; that these notes represented the $2,500 referred to in the bond. The vendee testified: "I was to fix up $2,500 of the indebtedness. I relied upon [the vendor's] statement as to the amount of the incumbrance at the time this contract was made. It was $2,500." *Held,* that the vendee's undertaking was to pay $2,500, with interest from the date of the bond, but not to pay any interest accrued prior to that date.

3. VENDOR AND VENDEE — SUIT ON PURCHASE NOTES — DEFENSES. — The two notes not having been paid at maturity, nor any of the interest on them, the whole debt, by the terms of the trust deed, was declared due, and the property sold by the trustee. In an action on the vendee's note, *held,* that it was his duty to have met those two notes, including all the interest on them, as they came due, inasmuch as the whole amount of such payments would not have equaled $2,500; and the facts that the vendor had failed to pay the previously accrued interest, payment of which would not have avoided default, and that, owing to the trustee's sale, he could not convey the legal title, did not excuse the vendee for not meeting the notes, nor furnish a defense to the action.

VOL. XII — 5

4. NEGOTIABLE INSTRUMENTS — ACTION ON NOTE — EQUITABLE RE-
LIEF.—The complaint stated a cause of action on the vendee's note.
The answer set up failure of consideration, by reason of the vend-
or's inability to convey a good title, because of the trustee's sale.
The reply alleged that such inability was due to the vendee's fail-
ure to pay the two notes as they matured. *Held*, that the deter-
mination of the questions does not require the aid of any principles
of equity, but simply legal principles, and therefore relief is war-
ranted under the pleadings.

*Appeal from District Court of Larimer County.*

ON the 7th day of February, 1882, appellee, Thomas J.
Wilson, agreed to sell to appellant, Ledru R. Rhodes,
certain real estate situate in Fort Collins, in this state.
Appellant paid appellee the sum of $1,300 in cash on the
purchase price of said premises, and gave to appellee his
note for $900, payable one year after date, with interest
at twelve per cent. per annum, and appellee executed
and delivered to appellant a bond for the conveyance of
the premises, which bond recites that appellee had agreed
to sell to appellant the premises therein described on
condition that appellant should pay to appellee said sum
of $900, according to the terms of his said note, and was
conditioned as follows: " Now, the condition of this ob-
ligation is such that if the said Ledru R. Rhodes shall
pay said note at maturity, and shall in meantime pay
taxes on said lot and ground, and the said Thomas J.
Wilson shall, on the completion of said payments, make,
execute and deliver, or cause to be made, executed and
delivered, a good and sufficient warranty deed to the said
premises, subject to incumbrance of $2,500 to estate of
Joseph Mason, deceased, or to such person or persons as
he may direct, then this obligation to be void; otherwise
to remain in full force."

At the time when the agreement to sell was made, and
the bond executed, appellee was the owner in fee of the
premises in said bond described, but there was a trust
deed thereon, and of record, bearing date November 18,

1880, made by the grantors of appellee to one Joseph Mason, to secure the payment of seven promissory notes of the same date as said trust deed, for the sum of $500 each, and payable with interest from date at ten per cent. per annum, the first in six months, the second in twelve months, and so on at intervals of six months, the interest on each note to be paid at maturity thereof. The deed of trust provided that, in case of default in payment of either note as the same became due, the entire indebtedness should thereupon become due, and authorized the sale of the premises to satisfy such indebtedness. Mason had died, and Wilson had paid the first and second of said notes, before the said bond was made. Before the note given by Rhodes to Wilson matured, the third and fourth notes secured by the trust deed fell due and were not paid, and the premises were sold under the trust deed to satisfy the remaining indebtedness secured thereby, and one W. C. Stover became the purchaser thereof.

When the note given by Rhodes to Wilson became due, Wilson tendered to Rhodes a warranty deed to the property, subject to the incumbrance on said premises at the time the bond was made hereinbefore set out, and subject to all sales made thereunder, and demanded payment of said note, and Rhodes refused to accept the deed so tendered, and refused to pay the note. This action was thereupon brought by Wilson to enforce payment of said note.

The defendant answered, setting up said bond, and alleging that the sole consideration for said note was the covenants in the bond; that the plaintiff had not, when said note became due, nor at any time since said date, "any title, right or interest in or to said premises, but was, and still is, wholly unable to keep and perform the conditions of said bond on his part; that on that date plaintiff refused, and still refuses, to sell the said premises to defendant, and to make, execute and deliver, or cause to be made, executed and delivered, to defendant

a good and sufficient warranty deed thereto, subject to an incumbrance of $2,500 to the estate of Joseph Mason, deceased, although defendant was ready and willing at and since that time to pay said note, if plaintiff would convey said premises to him by a good and sufficient warranty deed, subject to aforesaid incumbrance of $2,500 to the estate of Joseph Mason, deceased." A counter-claim for the $1,300 paid by defendant at the time the bond was given was set up in the answer.

Plaintiff in his reply admitted the execution and delivery of the bond, the receipt of the $1,300 in cash as part payment for the premises, and that the note sued on is the note mentioned in the bond, and denied all the other material allegations of the answer; and averred, among other things, that by the agreement made on the 7th day of February, 1882, Rhodes was to pay $4,700 for said premises, such payment to be made as follows: $1,300 of said sum to be paid down, $2,500 of said sum was to be paid to the estate of Joseph Mason, deceased, in payment and discharge of the said deed of trust, and to be paid as said indebtedness to said estate should become due and payable, and to pay $900 of said sum in twelve months from said 7th day of February, 1882, for which sum the note in suit was given; that defendant had failed to pay the said indebtedness to the Mason estate as it matured and had suffered the premises to be sold under said deed of trust on the 16th day of January, 1883, to satisfy such indebtedness; that before bringing this suit plaintiff had tendered to defendant a good and sufficient deed to the premises, subject to said deed of trust incumbrance, and the sale made thereunder; that on said 7th day of February, 1882, plaintiff delivered to the defendant the possession of said premises; and that defendant occupied and enjoyed the same for a long time thereafter.

Judgment for plaintiff for $730, and defendant appeals.

Messrs. BALLARD, ROBINSON & LOVE, for appellant.

Messrs. HAYNES, DUNNING & ANNIS, for appellee.

RISING, C. The rights of the parties must be determined by the terms and conditions of the agreement made on the 7th day of February, 1882.

It is contended by the appellee that the incumbrance mentioned in his bond to appellant was an existing incumbrance on the premises at the time the bond was made, and that the covenant to convey the premises was conditioned to convey the same subject to the then existing incumbrance to the estate of Joseph Mason, deceased; while appellant contends that the premises were to be conveyed to him at the time specified in the bond, subject to an incumbrance of $2,500 to the estate of Joseph Mason, deceased, to be then created or to be then existing, and of the exact amount named in the bond; and this contention by appellant is based upon the claim that the bond clearly and fully expresses the agreement; and that, under the well-settled rule that the terms of a written instrument cannot be contradicted or varied by parol evidence, the court erred in admitting parol evidence of the facts and circumstances attending the making of the agreement.

We do not think the terms of the bond, in relation to the incumbrance subject to which the conveyance is to be made, are sufficiently definite and certain to exclude parol evidence in relation thereto. It cannot be ascertained from the written instrument whether it was intended that the incumbrance should be a deed of trust, or a mortgage, or a mechanic's lien, or when it should be due and payable.

If the agreement between the parties provided what kind of an incumbrance the conveyance of the premises was to be made subject to, and provided when such incumbrance should become due and payable, parol evidence of these facts would not tend to contradict or vary

the terms of the bond, but would be in explanation thereof. The evidence admitted over the defendant's objection merely goes to show what kind of an incumbrance was provided for in the bond, and when the same was due and payable, and this was shown by showing the identical incumbrance agreed upon by the parties. The court did not err in admitting such evidence. *Mining Co. v. Tierney*, 5 Colo. 582; 2 Pars. Cont. (6th ed.) pp. 556, 562, note *h;* 1 Greenl. Ev. (13th ed.) §§ 286–288; *Randolph v. Helps*, 9 Colo. 29, 33; *Nash v. Towne*, 5 Wall. 689, 699; *Macdonald v. Longbottom*, 1 El. & El. 987.

What was the agreement of the parties in relation to the incumbrance as disclosed by the evidence? It is not necessary to review all the evidence, as, upon the question in controversy between the parties, there is no conflict therein. It will therefore be sufficient for our purpose to call attention to some of the prominent facts.

It is an admitted fact that on the 7th day of February, 1882, plaintiff's title to the premises was good and complete, except as to the said incumbrance to the estate of Joseph Mason, deceased. This admission shows that there was but one existing incumbrance for an indebtedness to the Mason estate, and the fact that the incumbrance mentioned in the bond referred to this indebtedness to the Mason estate is shown by uncontroverted evidence.

Appellee, as a witness, was asked this question: "Did you have any conversation with Mr. Rhodes, with reference to these notes and incumbrance, at the time this bond for a deed was executed, and, if so, what?" Which question was answered by the witness as follows: "I had a talk with him about it at the time the bond was drawn, and asked him if he would pay them. He wanted to know the interest that was on it, and I told him they were drawing ten per cent. interest. He said that was all right; that he was settling up the estate, and could

pay them off very easily in legal talent. Appellant, in his testimony upon cross-examination, said: "I don't know where the notes were which constituted the incumbrance mentioned in the bond, or anything about them. I don't know that I knew of their being in the Poudre Valley Bank until lately; might have known it, but am not certain."

Appellant, being recalled as a witness in his own behalf, after stating the circumstances of his finding out that the notes had been drawing interest for about a year and a half, testified as follows: "I then went to Wilson, and told him that I was to pay $2,500 only of the indebtedness to the Mason estate, and asked him if he would pay the interest on those notes up to that time, so as to make the $2,500. * * * Wilson insisted that I should take it all up. I was to fix up $2,500 of the indebtedness, but he said I was to pay interest on the notes all the way through, — that is, from the time they were given, — and they amounted at that time to more than $300 more than their face. * * * I relied upon Wilson's statement as to the amount of the incumbrance at the time this contract was made. It was $2,500."

The testimony we have quoted is uncontradicted, and we think it clearly appears therefrom that the incumbrance mentioned in the bond was an incumbrance existing at the time the bond was made. It also just as clearly appears from the evidence and the circumstances of the case that, by the terms of said agreement, as between appellant and appellee, it was the duty of appellant, for his own protection, to see that the indebtedness to the Mason estate secured by an incumbrance on the premises, to the amount of $2,500, with interest thereon from the date of the agreement to the day of payment, was paid as it became due. The language used by appellant in stating his understanding of the agreement, "I was to fix up $2,500 of the indebtedness," is one way of saying that he was to pay that amount of said indebt-

edness, and it must be so construed. An agreement to pay an existing indebtedness, or a portion thereof, is an agreement to pay it as it becomes due and payable; and, while appellant did not agree to pay any part thereof, so as to make him personally liable to any one upon his failure to make such payment, yet, as between himself and appellee, he agreed to pay $2,500 thereof as it became due and payable, or to bear the loss, if any, consequent upon such non-payment. The fact that, if the indebtedness to the Mason estate was paid as it matured, the amount of such indebtedness remaining unpaid, at the time appellant's note became due, would be much less than the amount thereof to be paid by appellant, is a strong circumstance tending to show that the amount to be paid by appellant was to be paid as it became due.

When, after the making of the agreement, the question first arose between appellant and appellee in relation to the payment of this indebtedness, it was simply a question as to the amount which appellant was to take care of; appellee contending that such amount covered the principal indebtedness of $2,500, and the interest thereon from the date of the notes, and appellant contending that the amount which he was to care for did not include the interest on the notes from their date to the date of the agreement. The court below determined this question in favor of appellant, and under the pleadings we think it was determined correctly.

The plaintiff in his reply states that appellant was to pay $4,700 for the premises, and appellant testifies that he attempted to fix it so that he should only pay $4,700 for the property; so that we must assume that the agreed price to be paid for the premises was the sum of $4,700. This being so, it is clear, as a question of fact, that appellant's understanding of the indebtedness which he "was to fix" could not exceed the sum of $2,500.

It is contended by counsel for appellee that, by the terms of the bond, the conveyance of the premises was

to be made subject to the burden of the indebtedness to the Mason estate as it existed at the time the bond was made. Whether the bond should be so construed, if we were to look to it alone, is not a question before us. Appellee invoked parol evidence for the purpose of explaining the bond so far as it relates to the question of incumbrance, and he is bound by such explanation. It will not do to say that parol evidence should be admitted to show what incumbrance was referred to in the bond, and then say that such parol evidence should not be considered in so far as it explains the bond as to the amount of such incumbrance; and particularly should this not be said when, as in this case, such evidence not only does not tend to contradict or vary the terms of the bond, but limits the amount of the incumbrance therein mentioned to the exact sum therein specified.

Having reached the conclusion that the agreement of the parties, in relation to the incumbrance mentioned in the bond, was that the conveyance to be made by appellee to appellant of the premises therein mentioned was to be made subject to the incumbrance then existing on said premises in favor of the estate of Joseph Mason, deceased, to the amount of $2,500, the main question in the case is then presented.

Whose duty was it, as between appellant and appellee, to see that the indebtedness to the Mason estate was paid as it became due, so as to prevent a sale of the premises under the power in the deed of trust?

At the time the agreement was made the indebtedness to the Mason estate, secured by the deed of trust on the premises mentioned in the bond, exceeded the sum of $2,500 by the sum of $305.50; such excess being the amount of the accrued interest on the notes. Appellant claims that the interest which had accrued at the time the agreement was made formed no part of the $2,500 of said indebtedness to be taken care of by him. This claim of appellant seems to be well sustained by the terms of

the bond and the evidence in the case, and results from a fair construction of the agreement. *Cramer v. Lepper*, 26 Ohio St. 59–63.

It clearly appears from the evidence that appellant " was to fix up $2,500 of the indebtedness" as it existed at the time the agreement was made. Taking the premises subject to so much of the incumbrance thereon amounted to a payment by appellant on the purchase price to that amount, so that the whole amount of the purchase price was paid, at the time the agreement was made, in manner following: One thousand three hundred dollars in cash, $2,500 by taking the premises subject to an incumbrance of that amount, and $900 by appellant's note; and appellant took possession of the premises as purchaser under a completed sale of the premises. The fact that it was the duty of appellee to pay the interest accrued on the indebtedness at the time the agreement was made and as it became due did not relieve appellant from making the payments he should have made by the terms of the agreement.

The first note, secured by the deed of trust, amounted to $575 when it became due, and of this sum only $61.10 was for interest accrued at the time the agreement was made. The payment of this sum would not have protected the premises from a sale. To prevent a sale the payment of the whole amount due was required. Appellant, by paying the notes as they became due, could not only have fully protected the premises from sale, but would himself have been fully protected; as payments so made before his note to appellee became due would not equal the amount he should, by the terms of his agreement, pay for his own protection. Under these circumstances it was as much appellant's duty to pay the indebtedness as it became due, in order to protect his interest in the premises, as it would have been if he had received a deed therefor instead of a bond for a deed.

If an equitable action had been brought to compel the

specific performance of the agreement between appellant and appellee, the facts of this case would be sufficient to show a completed sale of the premises, payment therefor made, and possession thereof delivered to appellant as purchaser, and that the legal title thereto was retained by the appellee as security for the payment of the note given for and received as a part of the purchase price. Appellant would, in such an action, be held to be the equitable owner of the premises.

Facts held sufficient for such purposes in an equitable action are most clearly sufficient to show in this action that the consideration for the note sued on had not failed.

To enable appellee to comply with the conditions of his bond it was his duty to see that, at the time appellant's note became due, the amount of incumbrance on the premises did not exceed a sum which, together with the notes which had before that time become due and payable, would amount to the sum of $2,500, with interest thereon from the date of the agreement; and, by paying the amount of the interest accrued at the date of the agreement, the amount remaining unpaid would be the exact amount of incumbrance the premises were to be subject to at that time by the terms of the agreement; and the payment of the amount of such accrued interest by appellee, at any time before appellant became entitled to a deed by the payment of his note, would have placed appellee in a condition to have fully performed his part of the agreement, by making to appellant a warranty deed to the premises sufficient to convey the legal title.

The main difficulty encountered in the determination of the rights of the parties arises by reason of the failure of the parties to the transaction to definitely express the terms of their agreement; but we think that it sufficiently appears that it was the duty of appellant, as between him and appellee, to have paid the indebtedness to the Mason estate, which became due before his note

to appellee became due; and that, a sale of said premises having been made under the power in the deed of trust on account of the non-payment of such matured indebtedness, appellant must bear the loss consequent upon such sale; and the fact that, by reason of such sale, a deed from appellee would not convey the title to said premises is no defense to this action.

Counsel for appellant call our attention to the fact that this is a legal action, without an equitable phase or issue raised by the pleadings. We do not see how this fact aids appellant. The complaint states a cause of action upon a promissory note. The answer sets up a failure of consideration for the note by reason of the failure and inability of the plaintiff to convey certain premises to defendant by a good and sufficient warranty deed. The plaintiff replies that his failure and inability to make such conveyance was caused by reason of the failure of defendant to make certain payments which it was his duty to make.

The questions raised by these pleadings are: What was the agreement of the parties in relation to the matter in controversy, and what duties were imposed upon the parties by the agreement in relation to said matter? These questions can be determined without calling to aid any principles of equity jurisdiction or practice. If appellant had performed his duty in the payment of the indebtedness to the Mason estate as it became due, and had demanded a deed of appellee when the $900 note became due, appellee would have been compelled to pay of said indebtedness the amount of interest that had accrued at the time the agreement was made to enable him to comply with his agreement. The general rule in relation to the performance of contracts is that the performance must be such as is required by the spirit and meaning of the contract and the intention of the parties' as expressed therein. The tender of performance by appellee comes within the rule.

Upon the trial the court allowed, as a payment made on the $900 note at the time the first note to the Mason estate became due, something more than the amount of interest which had accrued on the indebtedness at the time the agreement was made. If the court erred in so doing, it is error without prejudice to appellant.

The judgment should be affirmed.

STALLCUP, C., concurring specially. DE FRANCE, C., dissenting.

PER CURIAM. For the reasons stated in the foregoing opinion of Commissioner RISING, the judgment of the court below is affirmed.

*Affirmed.*

MR. JUSTICE ELLIOTT, having tried this case below, did not participate in this decision.