## FORSYTH COUNTY *v.* GWINNETT COUNTY,

### and *vice versa.*

1. A county which causes a bridge to be constructed over a watercourse dividing it from another county can not compel the latter to pay any portion of the expenses thus incurred, unless the contract under which the work is done be made in the manner prescribed by law.
2. The statute relating to the taking of bonds from contractors in such cases is not, in a given instance, duly complied with when the bond contains a stipulation exempting the contractor from all liability to make repairs rendered necessary by ''actions of the elements.''

Argued June 10,—Decided July 26, 1899.

Complaint. Before Judge Hutchins. Gwinnett superior court. December 31, 1898.

*H. P. Bell, H. L. Patterson,* and *N. L. Hutchins Jr.,* for plaintiff.

*W. E. Simmons, C. H. Brand,* and *T. M. Peeples,* for defendant.

LUMPKIN, P. J. The ordinary of Forsyth County, after ineffectual efforts to secure co-operation from the board of commissioners of Gwinnett County, caused a bridge to be erected over the Chattahoochee river at a point where it divides the two counties. In letting out the work, a bond was taken from the contractor, the Virginia Bridge and Iron Company, which, among other things, stipulated that the company was to " keep said bridge in repair for seven years, actions of the elements only excepted." After the erection of the bridge, Forsyth County brought an action against Gwinnett County to compel contribution of its alleged fair proportion of the cost. At the trial there was much evidence tending to show that the bridge was a work of public necessity. There was, however, a verdict for the defendant. In the order overruling the plaintiff's motion for a new trial, the judge strongly intimated that he was of the opinion that, upon the question of necessity, the finding should have been in favor of Forsyth County, and based his refusal to set the verdict aside mainly on other grounds. In the view we take of the case, it turns upon purely legal questions.

1. In the first place, we do not think Forsyth County was en-

titled to compel Gwinnett County to pay any portion of the cost of the bridge, unless it was erected in accordance with the requirements of the law. This proposition does not seem to require extended argument. It certainly would not do to hold that the authorities of one county could, in a totally unlawful and unauthorized manner, cause a bridge to be erected over a stream dividing it from an adjoining county, and thereby acquire the right to compel such other county to pay a portion of the expenses thus incurred. Obviously such a doctrine would lead to pernicious consequences. As the right to compel contribution is one purely of statute law, the county attempting to assert it must show that in at least all substantial particulars the requirements of the statute were obeyed.

2. We have without serious difficulty reached the conclusion that, in letting out the contract for the building of the bridge now in question, the ordinary of Forsyth county did not properly comply with that requirement of the statute which relates to contractors' bonds. Sections 367–371 of the Political Code were codified from the act of August 8, 1881 (Acts of 1880–1, pp. 132–3), "to regulate the manner of letting out contracts to build or repair public bridges over watercourses which divide one or more counties from each other, and to provide for the payment of the same when completed." These sections deal comprehensively with the subject of "county-line" bridges. Section 369 expressly declares that "Contractors who are awarded contracts under this and the two preceding sections shall be required to give bond in double the amount of the bid, with two good and solvent securities, who shall justify before signing said bond, conditioned for the faithful performance of the contract, and to indemnify the counties for any damages occasioned by a failure to perform said contract within the time provided, and keep said bridge, or repairs made thereon, in good condition for a period of time not less than seven years." As will have been seen, the ordinary of Forsyth County allowed a qualification to be inserted in the bond given by the contractor, which, in effect, practically nullified its obligation to keep the bridge in good condition for the term specified, to wit seven years. The company was exempted

from all liability in this regard on account of injury or depreciation sustained by "actions of the elements." As pertinently remarked by counsel for the defendant in error, this stipulation relieved the contractor from responsibility for all damages which might result from "not only the greatest, but about the only, danger to which bridges are exposed." This infirmity in the bond certainly related to a matter, not merely of form, but, in the strictest sense, of substance:

The foregoing disposes of the present case. It may not, however, be improper before closing to note that, so far as relates to the taking of a contractor's bond, there is a marked difference between the requirements of the law relating to the construction of "county-line" bridges, and the provisions of law under which bridges wholly within the limits of a county may be built. As to the latter, section 670 of the Code of 1882 (Political Code, § 602) conferred upon ordinaries authority "To require sufficient bond and good security for the faithful performance of all such works and contracts, and to indemnify for all damages occasioned by a failure so to do." Section 671 of the Code of 1882 declared that "When a public bridge, ferry, turnpike, or causeway is let out, the contractor must, in his bond, make a condition also to keep it in good repair for at least seven years, and as many more years as the contract may be for." This last section was amended by the act of December 29, 1888 (Acts of 1888, p. 39), so as to allow county authorities to dispense with the last-named condition in contractors' bonds, if, in their opinion, so doing "would be to the public interest." The provisions of this section, as thus amended, now appear in section 603 of the Political Code.

It is further to be observed that the above-mentioned act of August 8, 1881, had not been codified when the act of 1888 was passed, and consequently the latter act could not possibly have had, or been intended to have, any application to the class of bridges dealt with in the act of 1881. Indeed, it is expressly declared both in the title and in the body of the act of 1888 that its sole purpose was to amend "section 671 of the Code of 1882." It will therefore be seen that section 603 of the Political Code must necessarily relate exclusively to bridges other

than "county-line" bridges, and that the law as to these, now embraced in sections 367–371 of the Political Code, is not to be construed in pari materia with section 603. Sections 367–371 distinctly declare the legislative will concerning the building of bridges over watercourses dividing two or more counties The General Assembly having, in its wisdom, seen proper to make the above-indicated distinction with reference to the two classes of bridges, and to require that contractors for "county-line" bridges *shall* be required to give bond to keep such bridges "in good condition for.a period of time not less than seven years," we are not at liberty to hold that this imperative mandate of the statute shall be treated as relating to a mere matter of form. On the contrary, we repeat that it is, in the strictest sense, a matter of substance. If, in the present case, Gwinnett County should be forced to become the unwilling owner of an interest in the bridge which the ordinary of Forsyth County caused to be built without requiring the contractor to keep the same in repair for a period "not less than seven years," Gwinnett county would be forced to assume a liability not contemplated by the statute.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring.*