## DECATUR COUNTY *v.* PRAYTOR, HOWTON & WOOD CONTRACTING COMPANY.

1. A county is liable to suit by contractors for breach of a valid and binding contract for the building of a bridge over a river in such county, upon the assumption that the difference between the representations in the plans and specifications as to the facts and conditions under the bed of the river, and the actual facts and conditions thereof, amounted to a breach of the contract by the county.

2. Where a county enters into a valid and binding written contract for the building of a bridge across a river, and where, after considerable work has been done by the contractor, it is discovered that the bridge can not be completed under the plans and specifications which were prepared by the authorized agents of the county and made a part of the contract, and where, upon such disclosure, the contractors promptly notify the county that it is impossible to complete the bridge under the original plans and specifications, and where the county thereupon engages another contractor to complete the structure, ·and where the difference between the representations of the plans and specifications as to the facts and conditions under the bed of the river and the actual facts of the situation amount to an actual breach of the contract by the county, the county can be sued at law for a breach of such contract on its part.

3. Under the facts stated in the first question propounded by the Court of Appeals, the contractors would not be entitled to recover the entire profits which they would have made if they had completed their contract, but they would be entitled to recover only the value of materials furnished and the work done by them upon the bridge up to the time

they abandoned the project, less any amount paid them under the contract.

No. 5497. MARCH 5, 1927.

The Court of Appeals (in Case No. 17194) requested instructions from the Supreme Court upon the following questions:

"1. Where a county enters into a valid and binding written contract for the building of a bridge across a river (all requirements of law in connection with the contract having been complied with), and where, after considerable work upon the bridge has been done by the builders (the other party to the contract), it is disclosed that the bridge can not be completed under the plans and specifications (which were drawn by the authorized agents of the county and made a part of the contract); and where, upon such disclosure, the builders promptly notify the county that it is impossible to complete the bridge under the original plans and specifications; and where the builders are not equipped with the machines and appliances required for the completion of the bridge under such new plans and specifications as would have to be drawn (which fact was known by the county); and where the county thereupon engages another contractor to complete the structure, can the original builders maintain an action at law against the county for damages for a breach of contract, assuming in this question that the difference between the representations in the plans and specifications as to the facts and conditions under the bed of the river and the actual facts and conditions thereof amounted to a breach of the contract by the county?

"2. If the preceding question is answered in the affirmative, then an answer is requested to the following question: Under the facts as stated in the preceding question, would the county be liable merely for the difference between the contract price of the work actually done and the amount paid thereon, or would it be liable for the entire profits which the builders would have received for the completion of the bridge under the contract?"

*H. G. Bell* and *Pottle & Hofmayer,* for plaintiff in error.

*Jones, Evins, Moore & Powers, Copeland & Dukes, T. G. Connell,* and *E. K. Wilcox,* contra.

HILL, J. Counsel for both sides treat the first question propounded by the Court of Appeals as one asking whether the county is liable to be sued at all upon the cause of action stated therein. Counsel for the county assert, which is true, that "A county is not

liable to suit in any cause of action, unless made so by statute."
Civil Code (1910), § 384. They next assert that there is no stat-
ute making the county liable to suit for this cause of action. They
then draw the conclusion that, as there is no such statute, no action
will lie against the county on the cause of action set out in this
question. Counsel for the contractor admit the major premise of
the above syllogism, but deny its minor premise, and the conclusion
drawn therefrom by counsel for the county. So counsel for both
sides treat the first question propounded by the Court of Appeals
as meaning this: Is the county liable at all to suit by the con-
tractor on the cause of action outlined in this question?

1. We shall first deal with the question as having this meaning,
as counsel for both sides deal with it and as if it were susceptible
of this construction. Under the laws of this State, can the con-
tractor sue the county for its breach of this valid and binding con-
tract, made by the county with him for the building of this bridge,
such breach being brought about in the manner stated in this ques-
tion? Each county in this State is made by the constitution a
body corporate, with such powers and limitations as may be pre-
scribed by law. Civil Code (1910), § 6594. "Every county is a
body corporate, with power to sue or be sued in any court." § 383.
"A county is not liable to suit for any cause of action, unless made
so by statute." § 384. Sections 383 and 384 must be construed
together, and they must receive a reasonable construction. The
first of them subjects the counties of this State to suit, but not to
suits upon all causes of action. It does not make them generally
liable to suits, like individuals or as municipal corporations. Being
political subdivisions of the State, they can not be sued unless made
subject to suit expressly or by necessary implication. *Scales* v.
*Ordinary*, 41 *Ga.* 225; *Dent* v. *Cook*, 45 *Ga.* 325; *Millwood* v. *De-
Kalb County*, 106 *Ga.* 743 (32 S. E. 577). In *Scales* v. *Ordinary*,
supra, it was held that under the laws of this State an action does
not lie against a county for damages caused by the neglect of the
proper authorities to repair a bridge, it not appearing that it was
a toll-bridge or such an one as was built by a contractor, and that
there was a failure to take the proper bond of indemnity required
by law. In *Collins* v. *Hudson*, 54 *Ga.* 25, it was held that the
county was liable to a traveler for damages caused by a want of
proper repairs to a public bridge, where such bridge was erected

by letting it out to the lowest bidder, and no bond was taken from the contractor faithfully to perform his contract, and to indemnify for damages occasioned by his failure so to do and to keep the bridge in good repair for seven years. In *Cook* v. *County of De-Kalb,* 95 *Ga.* 218 (22 S. E. 151) it was held that where, prior to the passage of the act of 1888, a public bridge was constructed under contract with the authorities of one county across a stream dividing it from another, it was the duty of the county authorities causing the construction of such bridge to take a bond in accordance with the previously existing law, and that on. failure so to do the county was liable for damages resulting to a traveler, occasioned by a defect in such bridge, of which the county authorities had timely notice. Section 384 was codified from the decisions of this court in the cases of *Hammond* v. *Richmond County,* 72 *Ga.* 188, and *Smith* v. *Wilkes and McDuffie Counties,* 79 *Ga.* 125 (4 S. E. 20). *Millwood* v. *DeKalb County,* supra. It must be construed in the light of these decisions. In the first of these cases it was held that a county is not responsible in damages for the tort of one of its chain-gang guards in unlawfully beating a convict. In *Smith* v. *Wilkes and McDuffie Counties,* it was held that a county would not be liable for damages caused by the faulty manner in which a public free bridge between two counties was built by a contractor, on the ground that it was not the duty of the county authorities to supervise the work of the contractor under our statutes. In both of these cases the actions were ex delicto. So a county is not liable for the negligent performance of duties which the county authorities are compelled to perform, or for the negligent discharge of duties voluntarily assumed in the exercise of a discretion vested in them by law. *Millwood* v. *DeKalb County,* supra. So a county is not liable upon an action for a tort unless so made liable by some statute. In *Bailey* v. *Fulton County,* 111 *Ga.* 313 (36 S. E. 596), the county was held not liable for a tort committed by its chain-gang superintendent in unlawfully imprisoning and compelling one to work for the county in obedience to instructions from the county authorities. So in *Brunson* v. *Caskie,* 127 *Ga.* 501 (56 S. E. 621, 9 L. R. A. (N. S.) 1002), this court held that a county is not liable for damages for injuries resulting from a defect in a public road. So in *Howard* v. *County of Bibb,* 127 *Ga.* 291 (56 S. E. 418), it was held that the county was not

liable for damages arising from the pollution of a stream, caused by the working of a public road, as a result of which plaintiff's cows were poisoned. In *Hubbard* v. *Fulton County,* 144 *Ga.* 363 (87 S. E. 281), the county was held not liable to a pedestrian who was hurt by falling into an open and unguarded drainway from the surface of the road through an embankment to a culvert built by the county for the purpose of draining surface-water from the road. It is now firmly and fully settled, that a county is not liable for torts committed by its officers or servants in the discharge of public duties imposed upon it by law, in the absence of some statute making it so liable. *Wood* v. *Floyd County,* 161 *Ga.* 743 (131 S. E. 882).

But how about its liability on its valid and binding contracts? In *Dent* v. *Cook,* supra, it was held that the ordinary of a county had no authority under the general law of this State, even with the recommendation of the grand jury, to borrow money on the credit of the county; and that, if for this purpose he issued bonds and sold them, the county was not liable to suit on the bonds so issued. The ruling in this case would have been otherwise if the ordinary had had authority to contract the debt. In *Robinson-Humphrey Co.* v. *Wilcox County,* 129 *Ga.* 104 (58 S. E. 644), the county was held not liable to suit for damages for breach of an executory contract for the sale of bonds which the county was subsequently authorized to issue. This ruling was put upon the ground that the county had no authority to make the contract at the time it was made. If the contract had been made after the issue of the bonds had been authorized, a different question would have been presented. In *Decatur County* v. *Roberts,* 159 *Ga.* 528 (126 S. E. 460), the county was not authorized to make the contract sued upon.

Whenever a county is by statute made liable for a given demand, an action against it will lie therefor, though the statute does not in express terms authorize or provide for the bringing of such an action. *Mackey* v. *Ordinaries,* 59 *Ga.* 832; *Davis* v. *Horne,* 64 *Ga.* 69; *Smith* v. *Floyd County,* 85 *Ga.* 420 (11 S. E. 850); *Barfield* v. *Macon County,* 109 *Ga.* 386 (34 S. E. 596); *Harris County* v. *Brady,* 115 *Ga.* 767 (42 S. E. 71); *Wagener* v. *Forsyth County,* 135 *Ga.* 162 (68 S. E. 1115); *Adkins* v. *Crawford County,* 135 *Ga.* 679 (70 S. E. 335); *Nalley* v. *Carroll County,* 135 *Ga.* 835

(70 S. E. 788) ; *Weathers* v. *Easterling,* 153 *Ga.* 601 (113 S. E. 152) ; *Board of Commissioners* v. *MacDougald,* 157 *Ga.* 595 (122 S. E. 317) ; *Board of Education* v. *Hunt,* 159 *Ga.* 749 (126 S. E. 789). In *Smith* v. *Floyd County,* supra, this court held that under the constitution of this State private property can not be taken or damaged for public purposes without just and adequate compensation being first paid; and that where the county damaged private property by constructing an embankment and trestlework as an approach to a public bridge, the county would be liable to the owner for such damages, although there was no statute expressly authorizing such an action. This ruling was followed in the other cases last cited. In *Talbot County* v. *Mansfield,* 115 *Ga.* 766 (42 S. E. 72), this court held that "A county is not liable to be sued unless liability is fixed or the suit is authorized by statute." In *Harris County* v. *Brady,* supra, this court held that "Whenever a county is by statute made liable for a given demand, an action against it will lie therefor, though the statute does not in express terms authorize or provide for the bringing of such an action." In *Talbot County* v. *Mansfield,* supra, this court held, that a person charged with crime may, under certain circumstances, be sent to a jail of a county other than that in which the crime was committed, for safe-keeping; that an obligation is imposed by law on the county where the crime was committed, to pay to the other county all necessary jail fees and costs incurred in behalf of the prisoner, such as necessary medical attention; and that if payment thereof is refused or is not made, the county incurring such expense has a right of action against the county from which such prisoner was sent, to recover the same. Whenever a county is made liable by statute for a demand, or is authorized by statute to contract, and in pursuance of such power does contract, then an action will lie against it to enforce such liability, or to enforce any rights growing out of such contract, although there is no statute expressly authorizing the bringing of an action for such purpose.

In this State counties are authorized to make many contracts. They can contract for the building or repair of court-houses, jails, bridges, causeways, or other public works. Civil Code (1910), § 387. The ordinary of a county is authorized to appropriate, out of any unexpended pauper funds, a sufficient amount to provide decent interment of deceased paupers. § 556. In *Walker* v. *Shef-*

*tall,* 73 *Ga.* 806, this court held that where a coroner, as an official, not as an individual, caused dead paupers, the victims of a storm, to be buried decently, he was entitled to be reimbursed by the county by virtue of this section, and that an action would lie for such claim. The ordinaries of the several counties of this State have the power and authority to purchase pauper farms. Civil Code (1910), § 543. Where a county obtained possession of land and the crops growing thereon, belonging to another, for a pauper farm, under a void contract, the county was held liable to the owner of the land for its rental value for the time during which the land was actually occupied and used by the county, and for the value of the crops thereon. *Bailey* v. *Miller County,* 24 *Ga. App.* 746 (102 S. E. 178). Proper county authorities can contract for bridges over streams between them. Civil Code (1910), § 419. Counties lying adjacent to any river on the border of or forming the boundary between this State and another, have the power to contract, in co-operation with the proper authorities of the adjacent State, for the building and maintaining of bridges over such rivers. § 424. It is lawful for any county in this State to co-operate with any municipality in such county in the construction, repair, and improvement of any roads, streets, street pavement on any streets or roads within such municipality which form a part of the county or State system of highways. Acts 1925, p. 152; Georgia Code 1926, § 431(1). So, upon the sanction of a popular vote, counties can contract debts for the construction or repair of public buildings and public roads. Whenever counties are so authorized to contract, and make valid contracts in pursuance of such power, they are liable to suit for breaches thereof. In other words, a county can always be sued upon any liability against it created by statute, or for breach of any valid contract which it is author-ized by law to make.

2. But we do not construe the first question to mean what counsel for both parties in their briefs seem to treat it as meaning. We think this question clearly means this: Is the cause of action set out in this question one which is maintainable at law, or is it one only maintainable in equity? Is the plaintiff's action maintainable at law? The case presented by the question is this: The action is brought for the breach of a valid and binding contract between the county and the builders, for the erection of a bridge.

After considerable of the work had been done, it was discovered that the work could not be completed under the plans and specifications which were prepared by the authorized agents of the county and made a part of the contract. Upon such discovery the builders promptly notified the county that it was impossible to complete the bridge under the original plans and specifications. The builders were not equipped with the requisite machines and appliances for the completion of the bridge under such new plans and specifications as would have to be drawn, which fact was known to the county. The county thereupon engaged another contractor to complete the structure. The question assumes that the difference between the representations in the plans and specifications as to the facts and conditions under the bed of the river, and the actual facts and conditions thereof, amounted to a breach of the contract by the county. In these circumstances, can the builders travel at law, or must they resort to equity? Where the builder is justified in not proceeding further with the performance of a contract for the building of a bridge, of which the owner has committed a substantial breach, or of which there has been a mutual rescission, or where full performance is rendered impossible by the conduct of the owner without fault on the part of the builder, assumpsit under the common-law courts will lie in behalf of the builder against the owner for the value of the work done and materials furnished in doing the work as far as it had progressed. 9 C. J. 863, § 199; Forkner *v.* Purl, 1 Ind. 489; Dobbins *v.* Higgins, 78 Ill. 440; Teakle *v.* Moore, 131 Mich. 427 (91 N. W. 636); San Francisco Bridge Co. *v.* Dumbarton Land & Imp. Co., 119 Cal. 272 (51 Pac. 335); 6 R. C. L. 976, § 347. Where assumpsit would lie by the common law, an action at law in this State will lie at law. So we are of the opinion that the first question propounded by the Court of Appeals, even if it is susceptible of either of the two meanings referred to above, should be answered in the affirmative.

3. Under the facts stated in the first question, is the county liable merely for the difference between the contract price of the work actually done and the materials actually furnished, and the amount paid thereon, or, is the county liable for the entire profits which the builders would have received for the completion of the bridge under the contract? It is earnestly insisted by counsel for the builders that they are entitled to recover the full contract price

for the building of this bridge, if they are prevented by the county from completing it. They insist that "It would be a reproach to the law if one seriously injured by a breach of contract could not recover therefor all the damages which he actually sustains." *Baldwin* v. *Marqueze,* 91 *Ga.* 404 (18 S. E. 309). We fully agree that a party is entitled to recover all damages which he actually sustains, if he is prevented from performing the contract by the act of the other party, and if he offers and stands ready to fully perform himself. There is a great difference between actual performance and excuses for non-performance. Gersmann *v.* Walpole, 139 N. Y. Supp. 1 (79 Misc. 49). If a party to a contract is prevented from performing it by the other party thereto, and if the party not in default offers and stands ready to perform the contract, in such case he would be entitled to recover the full contract price. If, however, the contract is expressly or impliedly rescinded by the parties, or if the builders are entitled to have the contract rescinded, and treat it as rescinded, such rescission, in the absence of an agreement fixing the rights of the parties, leaves the rights and the amount of the damages, if any, to be determined, not by the contract, but upon equitable principles. *Lytle* v. *Scottish-American Mortgage Co.,* 122 *Ga.* 458, 466 (50 S. E. 402). Where the contract is entire, and full performance by the builder is excused by reason of the wrongful acts of the owner, the builder may sue on the contract to recover for the work done according to the contract, and for the loss in profits or otherwise sustained by him; but if he treats the contract as rescinded and at an end, he can sue and recover the full value of the labor done and materials furnished in the partial performance of the contract, less payments made thereon. In these latter circumstances, he is entitled to the compensation provided for in the contract, so far as he has performed the work and furnished materials. Ellithorpe Air-Brake Co. *v.* Sire, 41 Fed. 662; San Francisco Bridge Co. *v.* Bumbarton Land & Improvement Co., 109 Cál. 272 (51 Pac. 335). The fact that full performance of the contract is prevented by the wrongful act of the owner does not necessarily entitle the builder to recover the compensation provided for in case the builder fully performs the contract, where he treats the contract as at an end. Dobbins *v.* Higgins, supra; Dunn *v.* Barton, 40 Minn. 415 (42 N. W. 289); 9 C. J. 822, § 159. Where the builder is excused from fully per-

forming the contract by some wrongful act of the owner, and he treats the contract as at an end, he is entitled to the compensation provided for in the contract, so far as he has performed the work, and no further. Penn Bridge Co. *v.* New Orleans, 222 Fed. 737 (138 C. C. A. 191) ; Cass County *v.* Gibson, 107 Fed. 363 (46 C. C. A. 341) ; Buffington *v.* Henton, 70 Wash. 44 (126 Pac. 58) ; Cochran *v.* Balfe, 12 Colo. 75 (54 Pac. 399) ; Kelley *v.* Torrington, 81 Conn. 615 (71 Atl. 939) ; Bonnett *v.* Glatfeldt, 120 Ill. 166 (11 N. E. 250, 252) ; Wilson *v.* Bauman, 80 Ill. 493; 9 C. J. 821, § 158.

So we are of the opinion that under the facts stated in the first question the county is not liable to the builders for the entire profits which they would have received for the completion of the bridge under the contract, but they would only have been entitled to recover the difference between the value of the work done, and materials furnished and the amount paid thereon.

*All the Justices concur, except*

RUSSELL, C. J., dissenting. 1. I concur in the result reached in the answer to the first question, but not as much upon the grounds stated as for the reasons which compelled me to dissent in the case of *Wood* v. *Floyd County,* 161 *Ga.* 743 (supra). Under the provisions of the uniform-procedure act of 1887 in a court which has both common-law and equitable jurisdiction, and under the provision which requires the court to provide an appropriate remedy if none is apparent in the law, it is immaterial in this case whether the proceeding seeks to apply equitable principles in the adjudication.

2. I can not agree to the answer to the question as appears in the second headnote; for, in my opinion, impossibility to perform, caused by the opposite party to a contract, provides a sufficient substitute for exact performance, if the failure to complete the contract is in no way chargeable to the party who undertook to perform.