## WOLF v. UPSON COUNTY, GA.

### No. 5888.

Circuit Court of Appeals, Fifth Circuit.

Nov. 12, 1930.

Archibald H. Davis and Reuben R. Arnold, both of Atlanta, Ga. (T. P. Stephens, of Thomaston, Ga., and Reuben R. & Lowry Arnold and A. H. Davis, all of Atlanta, Ga., on the brief), for appellant.

W. M. Dallas, J. H. McGehee, Jr., and James R. Davis, all of Thomaston, Ga., and John H. McGehee, Sr., of Talbotton, Ga. (James R. Davis, M. H. Sandwich, McGehee & McGehee, and W. M. Dallas, all of Thomaston, Ga., on the brief), for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is an appeal from a judgment sustaining a demurrer to appellant's petition as amended and dismissing the case. The amended petition claimed of the appellee, the county of Upson of the state of Georgia, damages for the death of appellant's husband, D. L. Wolf. That pleading, after alleging the existence prior and subsequent to April 1, 1929, of a bridge over Flint river which formed part of a public highway running between the cities of Talbotton and Thomaston, in the state of Georgia, contained the following allegations as to the construction of that bridge and a former one which it replaced, as to its condition at and prior to the time deceased came to his death, as to the washing away of the causeway, the northern approach to and the northern end of that bridge, and as to how the deceased lost his life:

"This bridge was constructed in the year 1895 by a contractor employed by Upson County, and the expenses thereof were borne jointly by Upson County and Talbot County, which was the county on the opposite side of the river to Upson County. * * *

"At some time prior to the year 1902, the exact date being unknown to petitioner, the bridge was washed away by the flood water of the river, and was replaced by a new bridge, which was established by the co-operative action of the proper county authorities of the adjacent counties of Upson and Talbot. * * *

"On or about March 7th, 1929, the high waters of the river washed away the Northern end of the said bridge and the approach thereto, the same being located in Upson County, on the Northerly side of said river. The Southern end of the bridge and the main span was left intact and to all appearances undamaged by the high waters. The bridge at the place where the washout occurred was about 20 feet above the ground. Petitioner alleges that defendant had actual and constructive knowledge of said washout shortly after it occurred, and two weeks or more prior to March 31st, 1929. On or about March 31, 1929, in the early morning hours, said D. L. Wolf was riding along the said highway in an automobile on the way from Columbus, Ga., to Thomaston, Ga. Said automobile was being driven by R. C. Miller, who was then living in Columbus, Ga. The said driver had no notice or knowledge of the defect in the bridge by reason of the washing away of the northern portion of the said bridge and the approach thereto. When the automobile reached the said bridge it was in the darkness of the night and the absence of the northern end of the bridge and the approach thereto could not be seen by said driver, and he proceeded across the river on said bridge, thinking same to be safe and sound. The automobile ran off the end of that portion of the bridge that had been left standing, and plunged a distance of 20 feet to the ground below. Said D. L. Wolf being in the automobile when it fell, received fatal injuries from which he died within a short time. * * *

"Although the washout in the bridge occurred about three weeks prior to the time said Wolf was killed, the defendant County Upson took no steps to restore said bridge or to repair it or fix it so as to render it safe for persons undertaking to cross; and therein defendant was guilty of gross negligence, as well as ordinary negligence which caused the said injuries and rendered defendant liable therefor to petitioner. * * *

"Petitioner shows that by Act of the General Assembly of Georgia, approved August 19, 1913, it was made the duty of the County of Upson to maintain constantly the causeways and other approaches to said bridge within its limits in such repair as to keep them open for the safe, free and uninterrupted travel of the public, and to build such causeways and approaches as often as may be necessary to do so to accomplish such purposes. Plaintiff further shows that on or about March 7, 1929, the causeway and northern approach to said bridge was washed away, leaving it unsafe, dangerous and impossible to cross from one side of the river to the other, and said Upson County took no action to repair the said damage or to afford safe travel of the public, or to build up said causeway and approach, until after petitioner's husband lost his life as elsewhere alleged in this petition. Wherefore petitioner alleges that said County committed an infraction of the public duty imposed upon it by the statute herein referred to, and by said infraction the special damage elsewhere alleged in the petition accrued to petitioner."

The grounds stated in the demurrer to the amended petition included the following:

"That petition shows on its face that the bridge was what is known as a "county line bridge" and is over a stream between the counties of Talbot and Upson, and the injury alleged by the plaintiff occurred more than seven years after said bridge was built."

As above indicated, the amended petition asserted a liability of Upson county for a death which was attributed to that county's breach of a duty to maintain in safe condition a bridge over a river which separates that county from another one, and an approach to that bridge. "A county is not liable to suit for any cause of action unless made so by statute." Georgia Code 1926, § 384. It is well settled by authoritative Georgia decisions that the just set out provision (which is in harmony with the rule generally prevailing in the absence of a statute on the subject, 9 Corpus Juris, 469) has the effect of exempting a county from liability to suit in the absence of a statute authorizing a suit for the breach of duty alleged, though that duty is one imposed on the county by statute. Decatur County v. Praytor, etc., Contracting Co., 163 Ga. 929, 137 S. E. 247; Millwood v. De Kalb County, 106 Ga. 743, 32 S. E. 577; Wood v. Floyd County, 161 Ga. 743, 131 S. E. 882.

Georgia statutes which deal with the subject of the construction and maintenance of bridges by counties of the state include the provision "that in every case the county shall be primarily liable for all injuries caused

by reason of any defective bridges, whether erected by contractors or county authorities." Georgia Code 1926, § 748. It is well settled that this provision does not apply to a bridge over a stream dividing one county from another. Forsyth County v. Gwinnett County, 108 Ga. 510, 33 S. E. 892; Willingham v. Elbert County, 113 Ga. 15, 38 S. E. 348. The appellant invokes the decision in the case of Cook v. De Kalb County, 95 Ga. 218, 22 S. E. 151. That case did not involve any question as to the meaning or effect of the last above set out provision, and the decision therein is not in conflict with decisions in later cases above cited, in which the subject of the meaning or effect of that provision was directly presented and explicitly ruled on. Decatur County v. Praytor, supra.

▮ Other Georgia statutes deal specifically with the subject of bridges between counties. Georgia Code 1926, §§ 419 et seq., 755 et seq. Those provisions include one for the contractor for the construction or repair of a bridge giving bond to keep the said bridge or repairs in good condition for a period of not less than seven years, and the provision that "if no bond or sufficient guarantee has been taken by the ordinary, the county is also liable for the damages." Ib. § 768. Under this provision, as construed by the Georgia courts, for a county to be liable there must have been a failure to take a bond from a contractor when such a bond was required, and the injury complained of must have occurred within the time which would have been covered by the contractor's bond, if such a bond had been given. County of Monroe v. Flynt, 80 Ga. 489, 6 S. E. 173; Dougherty County v. Newson, 107 Ga. 811, 33 S. E. 660; Willingham v. Elbert County, 113 Ga. 15, 38 S. E. 348; Wells v. Jefferson County, 19 Ga. App. 455, 91 S. E. 943. The allegations of the amended petition did not show that the appellee was liable under the provisions now in question, because they did not show that there was a failure to take a contractor's bond when such bond was required, or that the injury and death complained of occurred within the time during which a contractor was liable therefor.

▮ For support of the contention that the amended declaration alleged a cause of action against the appellee, counsel for appellant invoked the following Georgia statute, which was enacted in 1913:

"An Act to provide for maintaining in proper condition, Causeways and other approaches to public Bridges between counties in this State, and to provide a remedy when any county refuses or fails to do so.

"Section 1. Be it enacted by the General Assembly of the State of Georgia, That when bridges between different counties in this State have been established by the cooperative action of the proper county authorities of adjacent counties, it shall be the duty of each county to maintain constantly the causeways and other approaches to such bridges within its limits in such repair as to keep them open for the safe, free and uninterrupted travel of the public, at all times, over such causeways and other approaches, and to build up such causeways and approaches as often as may be necessary to do so to accomplish such purposes.

"Sec. 2. Be it further enacted, That if any such county refuses or fails so to do after reasonable notice, the other county may repair or build up the causeways and other approaches, either by contract or by the use of its convicts, as to such other county may seem best, and compel by suit, if necessary, the delinquent county to reimburse it for the actual cost to it of so doing.

"Sec. 3. Be it further enacted, That all laws and parts of laws in conflict herewith are hereby repealed." Georgia Laws 1913, p. 79.

The provisions of sections 1 and 2 of this act constitute, respectively, sections 757(1) and 757(2) of the Georgia Code 1926. Prior to the enactment of that statute, provision had been made for each of the counties connected by a county line bridge contributing to the building and keeping in repair thereof, and for one county compelling another by suit to contribute its fair proportion of such expense. Ib. §§ 755, 756. The enactment of the statute in question had the effect, with reference to a county's duty to contribute, and to its liability to suit for failing to do so, of putting causeways and approaches to public bridges between counties on the same footing as such bridges themselves. The statute contains no indication of a purpose to give a right of action against a county for a personal injury or death due to its breach of the duty imposed. It deals with the subject of a county's liability to suit for a breach of that duty. The only such liability created is the defaulting county's liability to suit by another county. The absence of an intention to make a county liable to a suit for a personal injury or death due to a breach of the duty imposed is indicated by the fact that for a breach of that duty a county is made liable to suit, but

only in favor of another county. It fairly may be inferred that if there had been an intention to create a liability to suit other than the one expressly provided for, that intention also would have been expressed. In our opinion the statute in question does not make a county liable to suit for a personal injury or death due to a breach of the duty which that statute imposed. Furthermore, it seems that the allegations of the amended petition fail to show that the decedent's death was due to the appellee's breach of the duty to maintain a causeway or other approach to the bridge mentioned. Though the allegations of that pleading show a breach of that duty, those allegations are consistent with the conclusion that the fall of the automobile into the river was due, not to that breach of duty, but to the absence of the northern end of the bridge itself.

We conclude that the above-mentioned ruling was not erroneous. The judgment is affirmed.